370 A.2d 350
**COMMONWEALTH of Pennsylvania**
**v.**
**John J. STASKO, Jr., Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 25, 1975.

Decided Feb. 28, 1977.

374

John P. Liekar, Public Defender, Washington, for appellant.

Jess D. Costa, Dist. Atty., John F. Bell, 1st Asst. Dist. Atty., Washington, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

JONES, Chief Justice.

Appellant, John J. Stasko, Jr., appeals from the judgment of sentence of the Court of Common Pleas of Washington County. He was indicted and charged with the

murder of Bernadette Marie Demeter on January 7, 1974. A jury found him guilty of murder in the second degree and appellant was sentenced to a prison term of ten to twenty years, with credit for time served. We find that the issues raised by appellant on this appeal are without merit and do not justify reversal of the judgment of the lower court.

Only a brief statement of facts is necessary in the disposition of this appeal. The victim was a part-time employee at the Montgomery Ward department store located in the Borough of Charleroi, Washington County, Pennsylvania. The defendant and victim knew each other and had dated for approximately nine months prior to the murder. The relation was broken off by the victim, however, on January 5, 1974.

On January 7, 1974, the victim worked at Montgomery Ward from 5:00 p. m. until 9:30 p. m. She drove to work and parked her car on the lot adjacent to the store. The night was clear and cold. At approximately 9:31 p. m., the victim left the store and proceeded to her car. Almost immediately thereafter, three witnesses who were driving across the parking lot heard the victim scream and observed another individual, later identified by the witnesses as the appellant, striking the victim on the ground beside her car. Upon seeing the witnesses, appellant fled the scene in the direction of the nearby Monongahela River. The witnesses gave chase and, with the assistance of the Charleroi Police, apprehended the appellant in the river. The victim died of multiple stab wounds of the chest en route to the hospital in an ambulance. No weapon was ever found.

The first issue raised by the appellant concerns the action of the trial judge in permitting the prosecution to take and use at trial a videotape deposition of one Patricia Doyle, an eyewitness to the event. Prior to the trial, the Commonwealth petitioned the court for leave to take the deposition of this witness, and produced the report of

her attending physician to the effect that she had had numerous abdominal operations for regional ileitis and ulcerative colitis and that, in his opinion, the emotional strain of appearing at the trial would greatly aggravate her condition. The court granted the petition and the deposition was taken, less than two weeks before the trial, in the presence of the trial judge, the appellant, his attorney, and an assistant district attorney. As reported by the court below, "the witness was fully and completely cross-examined by defense counsel." *Commonwealth v. Stasko,* Criminal, No. 67 of 1974 (C.P. Washington County, 1975). The videotape deposition was presented in its entirety to the jury at the trial.

Appellant claims that the taking and use of the deposition violated his right to confront the witnesses against him. This right is guaranteed by the Pennsylvania Constitution [1] and the Federal Constitution.[2] The purposes served by the right were summarized in *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L. Ed.2d 489 (1970):

"[The right] (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness

1. "In all criminal prosecutions the accused hath a right . . . to meet the witnesses face to face, . . ." Pa.Const. art. 1, § 9.

2. "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." U.S.Const. amend. VI. The Sixth Amendment right of confrontation is a fundamental right "made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas,* 380 U. S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965).

in making his statement, thus aiding the jury in assessing his credibility."

In short, confrontation is essential to the elicitation of reliable testimony. But confrontation at trial has never been held to be an absolute right. Where testimony taken prior to trial reveals sufficient "indicia of reliability" and affords "the trier of fact a satisfactory basis for evaluating the truth of the prior statement," it has generally been held admissible when the witness was unavailable at trial. *Mancusi v. Stubbs,* 408 U.S. 204, 216, 92 S.Ct. 2308, 2315, 33 L.Ed.2d 293 (1972). This is especially true where the prior testimony was given in the presence of the accused and the witness was subject to cross-examination. "[T]he right of cross-examination then afforded provides substantial compliance with the purposes behind the confrontation requirement . . ." *California v. Green, supra,* 399 U.S. at 166, 90 S.Ct. at 1939; *Mancusi v. Stubbs, supra; Barber v. Page,* 390 U.S. 719, 722, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Pointer v. Texas,* 380 U.S. 400, 407, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Mattox v. United States,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895).

■■ At common law, the state had the right to take and use depositions of unavailable witnesses if certain prerequisites were met:

"the right existed to read a deposition upon the trial of the defendant, if such deposition had been taken when the defendant was present and when the defendant's counsel had had an opportunity to cross-examine, upon proof being made to the satisfaction of the court that the witness was at the time of the trial dead, insane, too ill ever to be expected to attend the trial, or kept away by the connivance of the defendant." *West v. Louisiana,* 194 U.S. 258, 24 S.Ct. 650, 48 L.Ed. 965 (1904).

Of course, the declarant's inability to give live testimony must, in no way, be the fault of the state. *California v.*

*Green, supra; United States v. Singleton,* 460 F.2d 1148 (2d Cir. 1972), *cert. denied,* 410 U.S. 984, 93 S.Ct. 1506, 36 L.Ed.2d 180 (1973). Moreover, "a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber v. Page, supra; United States v. Singleton, supra.*

The common law right has been codified in the Federal Rules of Criminal Procedure. F.R.Crim.P. 15; *see also* 18 U.S.C. § 3503. In *United States v. Ricketson,* 498 F.2d 367 (7th Cir. 1974), *cert. denied,* 419 U.S. 965, 95 S.Ct. 227, 42 L.Ed.2d 180 (1974), the court held that admission of a deposition taken by the government pursuant to 18 U.S.C. §§ 3503 did not violate the defendant's right to confrontation:

> "In *California v. Green,* . . ., the Supreme Court said that previous testimony taken under circumstances approximating trial is admissible where the witness is unavailable despite good faith efforts of the Government to produce her. That statement controls here. Mrs. Noyes was under oath and Ricketson's counsel was given full opportunity to cross-examine her. This opportunity came after notice that the deposition was being taken for use at trial—an advantage Green's counsel did not have in *California v. Green.* The defendant was present at the deposition to assist his counsel." *Id.* at 374.

Many state courts have also concluded that government depositions may be taken and used at trial if the above safeguards of the defendant's constitutional right of confrontation are honored. *See, e. g., Noe v. Commonwealth,* 396 S.W.2d 808 (Ky.1965); *Coffman v. State,* 81 Nev. 521, 407 P.2d 168 (1965); *Kasieta v. State,* 62 Wis.2d 564, 215 N.W.2d 412 (1974).

In Pennsylvania, statutory authorization exists for the defendant to depose witnesses who reside "without the

State of Pennsylvania, but within the United States, . . . " Act of April 27, 1909, P.L. 258, § 1. It is also permissible, by statute, to use at trial former testimony of unavailable witnesses taken "before a court of record" where "the defendant has been present and has had an opportunity to examine or cross-examine, . . . " Act of May 23, 1887, P.L. 158, § 3. Neither of these provisions, however, have ever been held to preclude introduction, under the common law rule, of prior testimony of unavailable government witnesses taken in a setting which afforded the accused confrontation and an opportunity for cross-examination. In *Commonwealth v. Clarkson*, 438 Pa. 523, 265 A.2d 802 (1970), for example, appellant was found guilty by a jury of murder in the second degree. On direct appeal he requested reversal of his conviction because of the admission into evidence by the trial court of the transcript of testimony given at appellant's preliminary hearing by a prosecution witness who died prior to the trial. Appellant was present at the preliminary hearing, was represented by counsel, and was given the opportunity to cross-examine the witness. This Court accordingly held that no error had been committed by the trial court:

> "While it is true that the focus of a preliminary hearing is narrower than that of a trial, we are not persuaded that the difference requires exclusion of the testimony taken at such a hearing. *Our basic concern is for the reliability of the testimony which was elicited in the preliminary hearing, and we do not feel that its reliability is affected by the scope or focus of the proceeding.* It would certainly be more desirable to have the witness present at trial, but it would be vastly less desirable to exclude such evidence altogether." *Id.* at 525, 265 A.2d at 803 (emphasis added).

*See also Commonwealth v. Velasquez*, 449 Pa. 599, 296 A.2d 768 (1972); *Commonwealth v. Lenousky*, 206 Pa. 277, 55 A. 977 (1903); *Commonwealth v. Keck*, 148 Pa.

639, 24 A. 161 (1892); *Commonwealth v. Cleary*, 148 Pa. 26, 23 A. 1110 (1892); *Commonwealth v. Hall*, 232 Pa. Super. 412, 334 A.2d 710 (1975); *Commonwealth v. Miller*, 203 Pa.Super, 511, 201 A.2d 256 (1964); *Commonwealth v. Bone*, 64 Pa.Super. 44 (1916).

■ The common law rule is equally applicable to the deposition taken in this case. Notice was given to the appellant by the Commonwealth that the deposition would be taken. Appellant was present at the deposition and his counsel extensively cross-examined the witness. The judge who presided at the trial also conducted the deposition. The "good-faith effort" of the prosecution to obtain the witness' presence at trial is unquestioned and her inability to give live testimony was not the fault of the state. Furthermore, because the deposition was videotaped the jury did, in fact, have the opportunity to observe the demeanor of the witness and judge her credibility. Under the circumstances, there was "substantial compliance with the purposes behind the confrontation requirement . . . ", *California v. Green, supra,* and permission to take and use the deposition was properly granted.

■■ Appellant's second objection concerns the admission into evidence of a statement made by the deceased to witness, John R. Kruppa, which identified appellant as her assailant. Appellant contends that the statement was not admissible under the dying declaration exception to the hearsay rule. We have noted before that "the admissibility of such evidence depends primarily upon the state of the declarant's mind." *Commonwealth v. Smith*, 454 Pa. 515, 518, 314 A.2d 224, 225 (1973). An assumption of trustworthiness arises from the declarant's knowledge, at the time the statement is made, that death is imminent. Such knowledge "may be inferred from the existing circumstances including the nature of the wound and state of the declarant's illness."

*Commonwealth v. Smith, supra.* The witness testified that he found the deceased on her back beside her car, after the appellant had escaped toward the river. She was bleeding profusely from the mouth and moaning, and had suffered six stab wounds which lacerated her heart and lungs. Death occurred within one-half hour of the incident. Under the circumstances, the requisite sense of imminent death was clearly inferable and her declaration implicating the appellant was admissible. *See Commonwealth v. Smith, supra; Commonwealth v. Edwards,* 431 Pa. 44, 244 A.2d 683 (1968).

Appellant's third allegation of error is not reviewable by this Court since no timely objection to the pathologist's testimony was entered. *Commonwealth v. Crawford,* 461 Pa. 260, 336 A.2d 275 (1975); *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974).

■ The appellant next contends that it was error for the trial court to refuse to permit a psychologist who had examined appellant to testify at trial. The defense offered to call Dr. Guy C. Frisk, a qualified psychologist, who had conducted psychological tests of the appellant. This testing formed a part of the psychiatric evaluation performed by Dr. David B. Paul. Dr. Paul concluded, on the basis of his own examination of appellant and the tests conducted by Dr. Frisk, that appellant was sane. The defense did not call Dr. Paul to testify. Instead, the testimony of Dr. Frisk was offered, not to show insanity or diminished responsibility on the part of the appellant, but rather to reveal appellant's emotional makeup and, in particular, his "ability to withstand continued pressure and provocation." Brief for Appellant, p. 8.

■ In *Commonwealth v. McCusker,* 448 Pa. 382, 292 A.2d 286 (1972), we held that psychologic and psychiatric evidence was admissible for the limited purpose of determining whether a defendant acted in the heat of passion at the time of the offense. There, relevant evidence

of mental disorders which contributed to the impassioned state was withheld by the trial court from the jury. This ruling was found to be erroneous:

"As an aid to the jury . . . this Court has traditionally allowed an accused to offer testimony in an effort to establish his state of mind at the time of the crime." *Id.* at 391, 292 A.2d at 290.

No such evidence was offered, however, in the instant matter. The psychologist was introduced to testify concerning the appellant's tendency to have a short temper and erupt in sudden rages. The purpose of the testimony was to show that, in the case of this particular accused, there was sufficient provocation for the attack. This evidence was clearly inadmissible:

"Our law is quite explicit that the determination of whether a certain quantum of provocation is sufficient to support the defense of voluntary manslaughter is purely an objective standard." *Id.* at 389, 292 A.2d at 289.

The test for adequate provocation is "whether a reasonable man, confronted with this series of events, became impassioned to the extent that his mind was 'incapable of cool reflection.'" *Id.* at 390, 292 A.2d at 290. The reason for this rule was forcefully stated by Mr. Chief Justice Gordon in *Jacobs v. Commonwealth,* 121 Pa. 586, 592–93, 15 A. 465, 466 (1888):

"The questions thus proposed were properly rejected, because, had the required answers been received, the court could have done nothing else than instruct the jury to disregard them. They were intended, not to establish the fact that Jacobs, when he committed the homicide, was constrained by an insane impulse which for the time destroyed his free agency, but only to show that he was of an excitable temperament; . . . But a rule which would allow the justification of crime on such pretext would utterly pervert

and subvert the moral order of things. . . . The phlegmatic man may be moved to anger as well as the most nervous; the only difference is that it requires more to affect the one than the other; but when passion is once aroused in either, it is the same unreasoning and unreasonable power. Why, then, should it not excuse crime in the one as well as in the other? If the murder of the latter may thus be reduced in degree, why not that of the former? Questions, such as these, at once show the utter inapplicability of the rule contended for, hence it must be rejected. The main object of the Penal Code is to compel men to restrain their evil passions and desires, hence the want of such restraint is rather an aggravation of than an excuse for crime."

See also Small v. Commonwealth, 91 Pa. 304 (1880). There was, then, no error in the refusal of the psychologist's testimony.

The fifth assignment of error, concerning the trial judge's refusal to permit the introduction into evidence of medical opinions contained in a hospital record, is without merit for the reasons expressed in *Commonwealth v. Digiacomo*, 463 Pa. 449, 345 A.2d 605 (1975). *See also Commonwealth v. Mobley*, 450 Pa. 431, 301 A.2d 622 (1973); *Fauceglia v. Harry*, 409 Pa. 155, 185 A.2d 598 (1962); *Lane v. Samuels*, 350 Pa. 446, 450–451, 39 A.2d 626, 628 (1944); *Paxos v. Jarka Corp.*, 314 Pa. 148, 155, 171 A. 468, 471 (1934).

In his sixth argument, appellant objects to the lower court's refusal to permit the introduction into evidence of certain personal notes of the appellant. Appellant admits, however, that the notes "would have no bearing on his innocence or guilt, . . ." Brief for Appellant, p. 9. There was no showing of the relevancy of this evidence, and thus, it was inadmissible. *Commonwealth v. Hickman*, 453 Pa. 427, 309 A.2d 564

(1973). "Evidence should not be admitted if it serves no purpose." *Commonwealth v. Fell*, 453 Pa. 531, 309 A.2d 417 (1973).

The seventh contention of appellant raises a serious error on the part of the district attorney which, nevertheless, does not require the grant of a new trial. In his closing argument to the jury, the prosecutor, in setting the scene of the event, denigrated certain testimony of the appellant:

"All right, then he said something about the car wouldn't start. *I won't accept that,* but let's go with what he said. The car wouldn't start, and he wants to help." (Emphasis added).

Defense counsel made a timely objection to this statement and the trial judge, after observing that the objection was "well taken", instructed the jury as follows:

"The Jury will be instructed and charged by the Court that the evidence and the testimony is as they recollect it collectively, and not as Mr. Bell recollects it, or Mr. Panepinto recollects it."

This Court, on too many occasions, has had to express its disdain of improper and prejudicial remarks made by the prosecutor. We have made it "emphatically clear that expression of personal belief has no place in the argument of a district attorney to the jury." *Commonwealth v. Russell*, 456 Pa. 559, 563, 322 A.2d 127, 130 (1974). When prejudicial remarks are made by the prosecution, however, the trial judge may, under certain circumstance and if the impropriety is timely brought to the court's attention, correct the error. "Indeed, control of the prosecution's comments is largely delegated to the discretion of the trial judge." *Commonwealth v. Silvis*, 445 Pa. 235, 237, 284 A.2d 740, 741 (1971). Here, the indiscretion was quickly noted by objection and curative instructions were delivered. The question remains whether the instructions adequately protected the rights

of the accused. In *Commonwealth v. Russell, supra,* we held that the trial judge's instruction to the jury was insufficient to erase the prejudice of a witness' testimony. There, the witness testified as to the guilt or innocence of the defendant and also expressed his opinion that all the defense witnesses were lying. Compared with those comments, the single irresponsible remark of the prosecutor in this case was of a less prejudicial nature and, certainly, curable. The remark was not directed to the guilt or innocence of the accused. Nor did the prosecutor blanketly attack the appellant's credibility. Under the circumstances, we find that the trial judge's instructions were sufficient to assure the appellant of a fair and impartial trial. *See Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975).

In the final assignment of error, appellant claims that the trial court erred in refusing one of the appellant's points for charge. We find that the trial court's charge on voluntary manslaughter adequately covered the point and no error was committed.

Judgment of sentence affirmed.

NIX, J., filed a concurring opinion.

MANDERINO, J., filed a dissenting opinion.

NIX, Justice, concurring.

I concur in the result reached by the majority of this Court in the instant appeal. Specifically, I agree that appellant was not deprived of his federal and state constitutional rights of confrontation because under the facts of this case, it is unquestioned that the defense was provided a full opportunity to cross examine the witness during the deposition. Nevertheless, I am troubled by the majority's reliance upon *Commonwealth v. Clarkson,* 438 Pa. 523, 265 A.2d 802 (1970) to support this conclusion.

In *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L. Ed.2d 923 (1965), the United States Supreme Court held that prior testimony was admissible at trial only if the accused had been represented at the earlier proceeding and had an adequate opportunity to cross examine the witness. In my view, such an opportunity is not afforded a defendant at a preliminary hearing. The principal function of that proceeding is to protect an individual's right against unlawful detention. The Commonwealth therefore is required to establish a prima facie case that a crime has been committed by the accused. *Commonwealth v. Mullen,* 460 Pa. 336, 333 A.2d 755 (1975). In meeting this burden however, the Commonwealth need not present all its witnesses or divulge its entire case at this time. Similarly, the defense is not attempting to try its case or discredit witnesses but rather to learn the key elements and theory upon which the prosecution intends to proceed at trial.* Thus, the scope of the preliminary hearing is of such a limited nature that the full rights of a complete cross examination can not be adequately protected and therefore, the testimony adduced at these hearings should not be permitted when that witness is unavailable at trial.

I also concur in the view that the trial court properly rejected the proffered psychological testimony. A reading of the record makes it clear that the offer restricted the use of this testimony to the issue of the sufficiency of the provocation. As recognized in *Commonwealth v. McCusker,* 448 Pa. 382, 292 A.2d 286 (1972), this is an objective standard and the peculiarities and idiosyncracies of an accused are irrelevant.

---

* In view of the limited opportunity for pre-trial discovery in this jurisdiction, see Pa.R.Crim.Pro. 310, the preliminary hearing has traditionally been used as a vehicle through which the defense can obtain information from the Commonwealth's witness. Rarely, however, is it used for the purpose of impeaching these witnesses.

MANDERINO, Justice, dissenting.

I dissent. In *Commonwealth v. McCusker*, 448 Pa. 382, 292 A.2d 286, 287 (1972), we noted:

> "In the past century, psychiatry has evolved from tentative, hesitant gropings in the dark of human ignorance to a recognized and important branch of modern medicine."

If we are willing to recognize the importance of psychological and psychiatric evidence, we should also be willing to present that evidence to the jury. If the evidence is offered to show that a defendant acted in the heat of passion or to show a defendant's overall emotional makeup, the jury should be permitted to consider it in their deliberations of guilt.