COMMONWEALTH of Pennsylvania,
Appellee

v.

Hugo M. SELENSKI, Appellee.

Commonwealth of Pennsylvania,

v.

Paul Weakley.

Appeal of the Times Leader,
Intervenor.

Superior Court of Pennsylvania.

Argued Aug. 19, 2009.
Filed April 23, 2010.

Ralph E. Kates, III, Wilkes–Barre, for appellant.

Robert M. Buttner, Scranton, for Selenski, appellee.

Jarrett J. Ferentino, Assistant District Attorney, Wilkes–Barre, for Commonwealth, appellee.

BEFORE: GANTMAN, FREEDBERG, JJ., and McEWEN, P.J.E.

OPINION BY McEWEN, P.J.E.

¶ 1 Appellant, *The Times Leader*, appeals from the order that denied its motion to open a proceeding, held pursuant to Pennsylvania Rule of Criminal Procedure 500, to preserve the testimony of a witness in anticipation of the criminal trials of appellee-defendants, Hugo M. Selenski and Paul Weakley. We affirm.

¶ 2 The procedural history relevant to this appeal originated on May 19, 2006, when the Commonwealth charged appellees Selenski and Weakley with multiple counts of homicide, robbery, theft, conspiracy, and solicitation for the killing of Michael Kerkowski and Tammy Fasset. The Commonwealth, on February 27, 2008, filed a motion to preserve the testimony of a third party witness, Robert Steiner, in anticipation of trial. *The Times Leader* promptly filed motions to intervene and open the proceeding to preserve the testimony of Steiner. The Commonwealth and defendant Selenski both opposed the motion of *The Times Leader* to open to the public the testimony preservation proceeding.[1] The trial court, following a hearing, entered an order which directed that the proceeding be closed and that the "[t]ape of proceedings [remain] under lock and key in the district attorney's office." Order, May 21, 2008. The proceeding to preserve the testimony of Steiner was held immediately following the entry of the May 21, 2008, order, and this appeal followed.[2]

---

1. Paul Weakley pleaded guilty to federal charges related to the incident for which the Commonwealth had charged him and appellee Selenski, and did not take a position before the trial court on the motion to open the proceeding filed by *The Times Leader*. N.T., May 21, 2008, p. 4. While Weakley was subsequently listed as an appellee in this appeal, he chose to concur and join in the appellee's brief filed by the Commonwealth without filing a separate brief.

2. It is well settled that an order that denies a request for public access to a criminal proceeding or judicial documents constitutes a collateral order from which an immediate appeal may be taken. *See: Commonwealth v. Long*, 592 Pa. 42, 50, 922 A.2d 892, 897

¶ 3 *The Times Leader*, together with the Pennsylvania Newspaper Association as an asserted *amicus curiae*, presently argue that the trial court erred in closing the Rule 500 proceeding because (1) there exists a common law or constitutional right of public access to proceedings to preserve testimony in anticipation of criminal trial, (2) the trial court improperly placed a burden of proof upon the press to justify the opening of the proceeding to the public, and (3) appellees, the Commonwealth and defendant Selenski, failed to proffer sufficient justification to rebut the presumption of public access.[3] *The Times Leader* further argues that the transcript or recording of the proceeding constitutes a public judicial record, the disclosure of which would provide a proper alternative mode of relief.

¶ 4 While the arguments presented by *The Times Leader* and its *amicus*—that the trial court erred in closing the proceeding in light of a presumptive right of the public to attend a Rule 500 proceeding, and that the public is entitled to pretrial access to the materials memorializing that proceeding—raise interrelated issues, they nonetheless require separate consideration. Accordingly, we first consider the contention that the press and the public were entitled to attend the Rule 500 proceeding.

¶ 5 The threshold consideration of whether there exists a common law or constitutional right of public access to a judicial proceeding raises a pure question of law. Our standard of review, therefore, is *de novo*, and our scope of review is plenary. *See: Commonwealth v. Upshur*, 592 Pa. 273, 280, 924 A.2d 642, 647 (2007) (Opinion Announcing the Judgment of the Court); *Commonwealth v. Long*, 592 Pa. 42, 50, 922 A.2d 892, 897 (2007).

¶ 6 We need not tarry long with the question of whether the public enjoys a common law right to attend a pretrial proceeding to preserve testimony, for it is well established that such a privilege has not been held to flow from the public's right of access to attend a trial. *See: Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 387–391, 99 S.Ct. 2898, 2909–2911, 61 L.Ed.2d 608, 626–628 (1979). Thus, we turn to the question of whether constitutional principles guaranteeing public access to judicial proceedings create such a right.

¶ 7 It is well settled that the First Amendment to the United States Constitution,[4] and Article I, Sections 7 and 11 [5] of the Pennsylvania Constitution se-

(2007) (citing Pa.R.A.P. 313); *Commonwealth v. Fenstermaker*, 515 Pa. 501, 504 n. 1, 530 A.2d 414, 416 n. 1 (1987).

3. Specifically, *The Times Leader*, in the brief filed in support of this appeal, presents the following question for review: "Should the courtroom have been opened to the public during the deposition of a witness in a highly-publicized capital murder prosecution?" Brief of Appellant, p. 2.

4. The First Amendment to the United States Constitution states:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const., Amend. I.

5. Section 7 of Article I of the Pennsylvania Constitution provides, in relevant part:

The printing press shall be free to every person who may undertake to examine the proceedings of the Legislature or any branch of government, and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty.

cure a general right of public access to criminal proceedings, as well as to judicial records.[6] *See: Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 9, 106 S.Ct. 2735, 2740, 92 L.Ed.2d 1, 10 (1986); *Commonwealth v. Fenstermaker,* 515 Pa. 501, 506, 530 A.2d 414, 417 (1987); *Commonwealth v. Penn,* 386 Pa.Super. 133, 562 A.2d 833, 835 (1989), *appeal denied,* 527 Pa. 616, 590 A.2d 756 (1991), *cert. denied,* 502 U.S. 816, 112 S.Ct. 69, 116 L.Ed.2d 43 (1991). To resolve the critical question of whether those constitutional provisions guarantee public access to a particular pretrial criminal proceeding, we must focus upon the factors of "experience and logic" attendant the subject proceeding. *Commonwealth v. Long, supra,* 592 Pa. at 55, 922 A.2d at 900, *citing Press–Enterprise Co. v. Superior Court, supra,* 478 U.S. at 8–9, 106 S.Ct. at 2740, 92 L.Ed.2d at 9–10 (1986).

█ ¶ 8 The inquiry into the "experience" factor underlying a particular proceeding is directed principally to "whether the place and process have historically been open to the press and general public." *Commonwealth v. Long, supra,* 592 Pa. at 55, 922 A.2d at 900 (internal citations and quotations omitted). The United States Supreme Court has also emphasized that the proper focus of this inquiry rests upon "the experience in that *type* or *kind* of hearing throughout the United States[,]" and not solely upon the particular practice of a jurisdiction. *El Vocero de Puerto Rico v. Puerto Rico,* 508 U.S. 147, 150, 113 S.Ct. 2004, 2006, 124 L.Ed.2d 60, 65 (1993) (internal citations and quotations omitted) (emphasis in original) (holding that the national experience of convening open preliminary hearings compelled finding a presumptive constitutional right of public access to such hearings despite local rules permitting closure).

¶ 9 This Commonwealth has had in place, for more than a century, the practice of providing for the preservation of testimony in criminal matters:

- The Pennsylvania General Assembly, in 1909, authorized criminal defendants to take depositions of witnesses who lived outside the Commonwealth but within the United States. Act of April 27, 1909, P.L. 258, § 1.

- The Pennsylvania Supreme Court, in 1977, recognized that there existed a general common law right for the Commonwealth to take a deposition of a witness. *Commonwealth v. Stasko,* 471 Pa. 373, 379–382, 370 A.2d 350, 353–355 (1977).

- Shortly after the *Stasko* decision, the General Assembly, in 1978, enacted

Pa. Const., Art. I, § 7.

Section 11 of Article of the Pennsylvania Constitution further provides:

All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

Pa. Const., Art. I, § 11.

It bears noting that neither *The Times Leader,* nor its *amicus,* distinguish between the rights accorded to the press and the public under the Constitution of the United States and the Pennsylvania Constitution. However, we discern no basis upon which to conclude that the Pennsylvania Constitution provides greater rights of public access to judicial proceedings than those established under the Constitution of the United States.

**6.** Since this appeal raises questions directed solely to the right of the press and public to access criminal proceedings, we will not consider the import of the trial rights of a criminal defendant set forth in the Sixth Amendment to the United States Constitution and Section 9 of Article I of the Pennsylvania Constitution.

section 5919 of the Judicial Code, which authorizes the use, in a criminal trial, of depositions taken in compliance with the law governing a deposition taken outside the Commonwealth by either the defense or the Commonwealth. *See:* 42 Pa.C.S. § 5919.[7]

¶ 10 It was against this historical background that the Pennsylvania Supreme Court, in November of 1982, promulgated former Pennsylvania Rule of Criminal Procedure Rule 9015 (current Rule 500) to regulate the preservation of testimony, and, seven years later, added former Rule 9015A (current Rule 501) to govern the video recording of such proceedings.[8] Current Rule 500 states in relevant part:

**Rule 500. Preservation of Testimony After Institution of Criminal Proceedings**

**(A) By court order.**

(1) At any time after the institution of a criminal proceedings, upon motion of any party, and after notice and hearing, the court may order the taking and preserving of the testimony of any witness who may be unavailable for trial or for any other proceeding, or when due to exceptional circumstances, it is in the interests of justice that the witness' testimony be preserved.

(2) The court shall state on the record the grounds on which the order is based.

(3) The court's order shall specify the time and place for the taking of the testimony, the manner in which the testimony shall be recorded and preserved, and *the procedures for custody of the recorded testimony.*

(4) The testimony shall be taken in the presence of the court, the attorney for the Commonwealth, the defendant(s), and defense counsel, *unless otherwise ordered.*

(5) *The preserved testimony shall not be filed of record until it is offered into evidence at trial or other judicial proceeding.*

Pa.R.Crim.P. 500(A) (emphasis supplied). Moreover, subsection (B) of Rule 500 authorizes parties, based upon an agreement filed of record and without prior court approval, to conduct a proceeding to preserve testimony. Pa.R.Crim.P. 500(B). Rule 501, in turn, contains additional requirements for such proceedings that must be incorporated in the court order or the agreement of the parties to preserve the testimony when the proceeding is videotaped. Pa.R.Crim.P. 501.

---

7. Our study reveals no evidence or suggestion that the press or the public traditionally enjoyed a right to attend the actual taking of the deposition. Moreover, commonly used definitions of the term "deposition," both at the time of the enactment of Act of April 27, 1909, P.L. 258, § 1 and at present, reveal that such proceedings are separate from the underlying judicial proceeding. *Black's Law Dictionary,* Second Edition (1910), at p. 357 (defining a deposition as "testimony of a witness taken upon oral question or written interrogatories, *not in open court,* but in pursuance of a commission to take testimony issued by a court, or under a general law or court rule on the subject, and reduced to writing and duly authenticated, and intended to be used upon the trial of a civil action or criminal prosecution.") (emphasis supplied), quoted in *United States v. Microsoft,* 165 F.3d 952, 955 (D.C.Cir.1999). *See also: Black's Law Dictionary,* Seventh Edition (1999), at p. 451 ("1. A witness's *out-of-court testimony* that is reduced to writing (usu. by a court reporter) for later use in court or for discovery purposes. 2. The session at which such testimony is recorded.") (emphasis supplied).

8. The Pennsylvania Supreme Court, on March 1, 2000, amended former Rules 9015 and 9015A and renumbered them as Rules 500 and 501, respectively.

¶ 11 It is apparent from the above recited text that while a Rule 500 proceeding may share certain formalities reminiscent of a formal judicial proceeding,[9] a proceeding to preserve testimony retains several fundamental features of the common law deposition. Specifically, Rule 500(1) permits the parties to agree to convene a proceeding without an order of the court,[10] (2) permits the parties to agree to waive the presence of the judge at the proceeding,[11] (3) *withholds from the record any recording of the proceeding until it is admitted at trial or other "judicial proceeding,"* [12] and (4) vests custody of the recording of the proceeding with the party seeking to take the deposition.[13] Thus, there is no historical support for the asserted right of the public to attend a testimony preservation proceeding, nor a textual basis to suggest that the Pennsylvania Supreme Court, in its promulgation of Rules 500 and 501, intended to transform the historical practice of taking a deposition to preserve testimony for trial into a public judicial proceeding.

¶ 12 Nor does a review of the case law of other jurisdictions reveal any impression of a national experience to permit the general public to attend a proceeding to preserve testimony in criminal matters.[14] Indeed, neither *The Times Leader,* nor its *amicus,* call attention to, or discuss the import of, case law adverse to their position, namely, *In re Associated Press,* 162 F.3d 503 (7th Cir.1998), *Palm Beach Newspapers, Inc. v. Burk,* 504 So.2d 378 (Fla.1987), *cert. denied,* 484 U.S. 954, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987), and *People v. Pelo,* 384 Ill.App.3d 776, 323 Ill.Dec. 648, 894 N.E.2d 415 (2008)—decisions in which courts found no right of public attendance at a deposition taken in criminal cases. Simply put, the "experience" factor upon which a court might rely to recognize a right of public access, is not to be found.

¶ 13 Turning to the "logic" factor underlying the asserted public right to attend a proceeding to preserve testimony, the Pennsylvania Supreme Court has observed:

9. The increased formality in the manner in which parties conduct a proceeding to preserve testimony appears to address the concerns of the Pennsylvania Supreme Court regarding the right of confrontation of a criminal defendant in the event the admission of the testimony at trial becomes necessary. *See: Commonwealth v. Stasko,* 471 Pa. 373, 379–382, 370 A.2d 350, 353–355 (1977).

10. Pa.R.Crim.P. 500(B).

11. *See:* Pa.R.Crim.P. 500, Comment (providing that "[u]nder paragraph (A)(4), a judge should preside over the taking of testimony," but that "nothing in this rule is intended to preclude counsel, the defendant(s), and the judge from agreeing on the record that the judge need not be present"). *See also:* Pa.R.Crim.P. 500(B)(3).

12. Pa.R.Crim.P. 500(A)(5), (B)(5).

13. *See: Id.;* Pa.R.Crim.P. 500, Comment (noting that "[t]he party on whose motion testi-mony is taken should normally have custody of and be responsible for safeguarding the preserved testimony").

14. While some courts have held that the press and public possess a presumptive right to attend pretrial depositions in non-criminal cases, those decisions rested upon specific rights recognized under peculiar state constitutional provisions, or statutes. *See: In re Thrifty Dutchman, Inc.,* 97 B.R. 111 (Bkrtcy. S.D.Fla.1989); *United States v. Microsoft,* 165 F.3d 952 (D.C.Cir.1999); *Union Pacific R. Co. v. Department of Revenue,* 10 Or.Tax 235 (1986). It merits further mention that the peculiar statutory provision relied upon to grant public attendance at depositions in antitrust cases discussed in *United States v. Microsoft, supra,* namely, the Publicity in Taking Evidence Act of 1913, 15 U.S.C. § 30, was subsequently repealed by Congress effective November 2, 2002.

The "logic" inquiry focuses on "whether public access plays a significant positive role in the functioning of the particular process in question." In conducting this inquiry, a court should consider whether the process enhances the fairness of the criminal trial as well as "the appearance of fairness so essential to public confidence in the system." These considerations are related as they "shape the functioning of governmental processes."

*Commonwealth v. Long, supra,* 592 Pa. at 55, 922 A.2d at 900 (citations omitted).

¶ 14 When viewed through the interpretive lens provided in *Long,* it is apparent that public access would not play a positive role in the functioning of the specific proceeding to preserve testimony, the general fairness of the criminal trial, or the overall public confidence in the criminal justice system. First, as to the functioning of the specific proceeding, public access would, despite any agreement by the parties, transform an informal discovery proceeding into a potentially lengthy and costly formal judicial proceeding that would require (1) the presence of the trial judge, (2) the contemporaneous presentation of all objections, (3) innumerable sidebar conferences held beyond the hearing of the public to address those objections, and (4) eventual rulings on the record regarding each objection. Second, as to the general fairness of the trial itself, whereas here, the testimony is preserved by videotape, the public will ultimately have the opportunity to hear the preserved testimony, as well as the inflections and tone attendant that testimony, and even observe the visual demeanor of the witness should the underlying case proceed to trial. Third, as for overall public confidence in the criminal justice system, the opportunity to view all admissible aspects of the video recording at trial further refutes any argument that the exclusion of the public from the pretrial proceeding would damage the perception of fairness of the criminal justice system.[15] Thus, we discern no compelling logic that would justify public access to a proceeding to preserve testimony in anticipation of a criminal trial. Nor do we detect any basis upon which to conclude that public attendance at a Rule 500 proceeding would have a positive influence or effect upon the fairness of an open trial or any other judicial proceeding to adjudicate the parties' rights.

¶ 15 Moreover, the compelling principles underlying the need for criminal trial proceedings—which the eminent author of the dissent so perceptively summarizes—provide but halting support for either a need for, or a right of, public access to proceedings which but preserve testimony. We acknowledge that this Court, in *Commonwealth v. Buehl,* 316 Pa.Super. 215, 462 A.2d 1316 (1983), held that the constitutional guarantees of open trials apply with equal, if not greater force, to pretrial proceedings, and reasoned:

> For if the contraband, or the defendant's confession, or the identification testimony is suppressed, the prosecution may be over, but if not suppressed, conviction may be so certain that a guilty plea ensues. The decisive event in a prosecution is therefore often not the trial but the pretrial proceeding. If justice is to be done, and is to be seen as done, if the courts are to fulfill their proper role as one branch in our system of government, the public must have access both to the trial and to the pretrial proceedings

---

**15.** Even if a dispute arose over the editing of the video recording, Rule 501 requires the maintenance of an unedited original recording of the proceeding so as to resolve those disputes. Pa.R.Crim.P. 501(B)(10).

*Id.*, 462 A.2d at 1320–1321. Similarly, in *United States v. Criden,* 675 F.2d 550 (3rd Cir.1982), the United States Court of Appeals for the Third Circuit observed:

> [A] pretrial criminal hearing often is the most critical stage of a criminal proceeding. Decisions reached at the pretrial hearings often determine whether the defendant or the Government wants to proceed to trial. In many cases, the pretrial hearing is the only adversary proceeding the accused will have in resolving his case. The public's vital interest in evaluating the public officials who work in the criminal justice system cannot be fully vindicated unless the public and press can attend pretrial hearings. Otherwise, much of the work of prosecutors and trial judges may go unscrutinized.
>
> Of equal importance, pretrial hearings in criminal cases typically involve objections to the propriety of police conduct. In fact, the pretrial hearing may be the only point in the trial process at which the conduct of law enforcement officers is at issue. Because such conduct frequently occurs outside the public view, beneficial public scrutiny may never take place if not at the hearing itself.

*Id.* at 556–557 (citations omitted).

¶ 16 However, a Rule 500 proceeding, irrespective of its characterization as a formal criminal proceeding or as a means of informal discovery, shares none of the constitutional significance of pretrial hearings, such as a preliminary hearing or a suppression hearing, particularly since a Rule 500 proceeding simply preserves testimony for use at trial, and itself yields no decision as to the disposition of the accused. Thus, a Rule 500 proceeding cannot be considered to be a decisive event in the prosecution of the accused, and, notwithstanding public interest in the evidence to be provided by a potential testifying party, we detect no basis upon which to conclude that the compelling logic of open criminal proceedings applies in even meager fashion, let alone equal force, to a proceeding to preserve testimony.

■ ¶ 17 In sum, having found no experience or logic that warrants public attendance at proceedings to preserve testimony in criminal matters, we conclude that the general principles of public access to judicial proceedings enshrined in the First Amendment of the Constitution of the United States and Article I, Sections 7 and 11 of the Pennsylvania Constitution do not encompass a right to attend a Rule 500 proceeding. Accordingly, we detect no merit to the arguments of *The Times Leader* (1) that it possessed a presumptive right to attend the proceeding to preserve the testimony of Robert Steiner, and (2) that the trial court improperly shifted the burden of proof upon it to justify opening the proceeding to the public. Moreover, since the conduct of discovery rests within the sound discretion of the trial court,[16] and because the record here reveals no abuse of that discretion, we detect no basis upon which to disturb the decision of the eminent, now-President Judge Chester B. Muroski to exclude the press and the public from attending the proceeding to preserve the testimony of Steiner.

---

**16.** *See: Commonwealth v. Rucci,* 543 Pa. 261, 283, 670 A.2d 1129, 1140 (1996), *cert. denied,* 520 U.S. 1121, 117 S.Ct. 1257, 137 L.Ed.2d 337 (1997) (noting that questions involving discovery in criminal cases lie within the discretion of the trial court and that court's decision will not be reversed unless such discretion was abused); *Crum v. Bridgestone/Firestone North American Tire, LLC,* 907 A.2d 578, 585 (Pa.Super.2006) (noting that on review of an order concerning discovery, an appellate court applies an abuse of discretion standard).

¶ 18 The question remains, however, as to whether appellant is entitled to pretrial disclosure of either the transcript or the recording of the Rule 500 proceeding, notwithstanding the order of the trial court that the "[t]ape of proceedings [remain] under lock and key in the district attorney's office." Order, May 21, 2008. The failure of *The Times Leader* either (1) to request the materials memorializing the Rule 500 proceeding, or (2) to challenge that aspect of the order that placed those materials under "lock and key," compels the conclusion that this issue was not properly raised before the trial court, and thus has not been properly preserved in this appeal. Pa.R.A.P. 302(a).[17] Moreover, because no constitutional principle requires a testimony preservation proceeding to be open to the public, and in light of the express proscription of Rule 500 that "[t]he preserved testimony shall not be filed of record until it is offered into evidence at trial or other judicial proceeding[,]"[18] it follows that the transcript and the tape are not documents attendant a judicial proceeding until such time as it become necessary to offer and present the preserved testimony during an adjudication of·the substantive right of parties.[19]

¶ 19 Therefore, we conclude that neither the First Amendment to the United States Constitution, nor Sections 7 and 11 of Article I of the Pennsylvania Constitution establish a right of the public to attend the Rule 500 proceeding, and affirm the order of the trial court that denied appellant's motion to open the Rule 500 proceeding to the public.[20]

¶ 20 Order affirmed.

¶ 21 FREEDBERG, J., FILES A DISSENTING OPINION.

## DISSENTING OPINION BY FREEDBERG, J.:

¶ 1 I respectfully disagree with the majority's conclusion that constitutional principles of openness do not attach to Rule 500 proceedings. In my view, a Rule 500 proceeding is a pretrial criminal proceeding to which the public has a qualified First Amendment right of access.

17. Moreover, appellant, in its brief in support of its argument that the proceeding itself should be open to the public, only tangentially addresses the question of whether the transcript and videotape of the Rule 500 proceeding constitute public judicial documents to which it should have access.

18. Pa.R.Crim.P. 500(A)(5), (B)(5).

19. The decision of the Pennsylvania Supreme Court in *Commonwealth v. Upshur*, 592 Pa. 273, 924 A.2d 642 (2007) (Opinion Announcing the Judgment of the Court), does not alter our conclusion with regard to the pretrial disclosure of the materials memorializing the Rule 500 proceeding. In *Upshur*, Justice Saylor, who wrote the Opinion Announcing the Judgment of the Court, with Chief Justice Cappy and Justice Baer joining, opined that audio tapes played at a preliminary hearing constituted part of the public judicial record to which the media had a presumptive right of access under the common law. However, that decision is not relevant here since (1) the distinguished author of the Opinion Announcing the Judgment of the Court specifically noted that the conclusion in *Upshur* offered "no comment whatsoever concerning videotape. recordings of witness testimony[,]" (2) ·the tape at issue in that case had been played at the preliminary hearing, a proceeding to which attendance is presumptively open based upon its significance to the public adjudication of the substantive rights of the parties, and (3) the remaining four members of the Court, Justices Castille, Eakin, Baldwin, and Fitzgerald, each espoused a view that no right of public access to the original tapes existed. *Id.*, 592 Pa. at 286–287, 291, 924 A.2d at 650–651, 653.

20. The ruling of the trial court reflects, of course, the wisdom of The Sage: *'Twere better that 99 deadlines be missed than that the presumption of innocence of even one accused suffer taint.*

¶ 2 I have no quarrel with the majority's analysis of the public's common law right of access to criminal proceedings. "The importance of the public having an opportunity to observe the functioning of the criminal justice system has long been recognized in our courts." *Commonwealth v. Fenstermaker*, 515 Pa. 501, 530 A.2d 414, 417 (1987), *citing In re Oliver*, 333 U.S. 257, 266, 68 S.Ct. 499, 92 L.Ed. 682 (1948) (suggesting that the origin of our nation's practice of guaranteeing a public trial predates the settlement of our land); *Commonwealth v. Contakos*, 499 Pa. 340, 453 A.2d 578, 582 (1982) ("Closed trials are the mechanics of tyranny."). However, this general policy of openness did not apply to pretrial hearings at common law. *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 390, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) ("Closed pretrial proceedings have been a familiar part of the judicial landscape in this country;" specifically noting former Pa.R.Crim.P. 323 as evidence of a lack of common law right to open pretrial proceedings); *United States v. Criden*, 675 F.2d 550, 555 (3d Cir.1982) ("We recognize that, at common law, the public apparently had no right to attend pretrial criminal proceedings."); *Commonwealth v. Buehl*, 316 Pa.Super. 215, 462 A.2d 1316, 1319 (1983) (expressly adopting *Criden* ). Thus, the common law does not afford The Times Leader the right to attend the Rule 500 proceeding.

¶ 3 The common law and constitutional inquiries are similar, as "both rights of access seek to foster the fairness and the appearance of fairness of the criminal justice system by ensuring that the public has access to proceedings." *Long*, 922 A.2d at 897, *citing Fenstermaker*, 530 A.2d at 417–

18. However, "the First Amendment provides a greater right of public access than the common law." *Long*, at 897, *citing Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir.2006).[1] The evolution of our understanding of the First Amendment right of access was set forth by a panel of this Court as follows:

> In *Gannett Co. v. DePasquale*, 443 U.S. 368 [99 S.Ct. 2898, 61 L.Ed.2d 608] [ (1979) ], the United States Supreme Court held that the public has no right under the sixth amendment to attend pretrial proceedings in a criminal case. That case is not controlling here, for appellant invokes not the sixth but the first amendment. In *Richmond Newspapers, Inc. v. Virginia* [448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) ], the Court held that the public has the right under the first amendment to attend the *trial* in a criminal case; the Court did not consider the public's right to attend a *pretrial* proceeding. Therefore, that case is not controlling either. However, in *United States v. Criden* [675 F.2d 550 (3d Cir.1982) ], the Court of Appeals for the Third Circuit held that the same societal interests and structural arguments that mandated a first amendment right of access to criminal trials in *Richmond Newspapers* apply with equal force to pretrial criminal proceedings. [*Criden*,] 675 F.2d at 557.

*Commonwealth v. Buehl*, 316 Pa.Super. 215, 462 A.2d 1316, 1319 (1983). *Buehl* expressly adopted *Criden* and held that the public has a qualified First Amendment right of access to pretrial criminal proceedings [2] and to a copy of the transcript of such hearings.

---

**1.** The Pennsylvania Constitution provides the same right of access as the United States Constitution. *Commonwealth v. Hayes*, 489 Pa. 419, 414 A.2d 318, 322 (1980).

**2.** In my view, a Rule 500 proceeding is a "pretrial procedure." Thus, it is included in Chapter 5, "Pretrial Procedures in Court Cases," of the Rules of Criminal Procedure.

¶ 4 Based on *Buehl*, the First Amendment secures a public right of access to Rule 500 proceedings. Further, in *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) ("*Globe*"), the United States Supreme Court outlined a two-part test useful in analyzing whether any particular criminal proceeding is subject to the First Amendment right of access. In analyzing whether "a right of access to criminal trials ... is properly afforded protection by the First Amendment," the Court explained:

> First, the criminal trial historically has been open to the press and general public ... This uniform rule of openness has been viewed as significant in constitutional terms not only because the Constitution carries the gloss of history, but also because a tradition of accessibility implies the favorable judgment of experience ... Second, the right of access to criminal trials plays a particularly significant role in the functioning of the judicial process and the government as a whole. Public scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole. Moreover, public access to the criminal trial fosters an appearance of fairness, thereby heightening public respect for the judicial process. And in the broadest terms, public access to criminal trials permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government. In sum, the institutional value of the open criminal trial is recognized in both logic and experience.

*Globe*, 457 U.S. at 605–06, 102 S.Ct. 2613 (internal citations and quotations omitted). The Supreme Court formally adopted the "experience and logic" test in *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) ("*Press*

*Enterprise II* "), which relied upon the "experience and logic" test to conclude that the First Amendment right of access applies to preliminary hearings as conducted in California. Therefore, this test should be applied to the Rule 500 proceeding. Doing so, I conclude that the First Amendment secures a public right of access.

¶ 5 Although the majority's historical exposition of out-of-court depositions is comprehensive, it is not dispositive to the experience inquiry. For example, the majority has neglected any mention of former Pa.R.Crim.P. 323(e), which allowed for closed suppression hearings on motion of the defendant. The rule was rescinded in favor of Pa.R.Crim.P. 581. The comment to Rule 581 provides insight to the evolution of the constitutional right to public access to pretrial criminal proceedings as follows:

> Formerly, the law provided that a suppression hearing would be held in camera on motion of the defendant. Recently, however, developments in the law have established minimum constitutional requirements that are to be met before a court may order any criminal proceeding closed.
>
> The law on closure of criminal proceedings is still developing. The 1985 amendments, therefore, are intended to remove the possibility that the rule will be mistaken to imply that the defendant has an absolute right to closure of a suppression hearing. It is intended that a suppression hearing will be held in open court unless the court orders all or part of the hearing closed in accordance with the existing case law. *See, e.g., United States v. Criden*, 675 F.2d 550 (3d Cir.1982); *Commonwealth v. Hayes*, 489 Pa. 419, 414 A.2d 318 (1980); *Commonwealth v. Buehl*, 316 Pa.Super. 215, 462 A.2d 1316 (1983), in which the courts

recognized the public's general constitutional right to access to criminal proceedings.

Pa.R.Crim.P. 581, *Comment* (revised November 2, 2007, effective February 1, 2008.).

¶ 6 Further, there is a dearth of historical guidance on whether Rule 500 proceedings should be open to the press and public. The lack of specific guidance regarding the rule is not surprising. Rule 500, formerly numbered Rule 9015, was first adopted November 8, 1982, effective January 1, 1983. Pa.R.Crim.P. 500, *Note.*

¶ 7 In light of this bare historical record, Selenski advocates an examination of the express provisions of Rule 500, claiming that the Pennsylvania Supreme Court intended that testimony preserved pursuant to Rule 500 should not be readily accessible by the press and public until actually used at trial. Selenski contends that this intent is clearly implied by the language of Subsection (A)(4), which provides an enumerated list of individuals whose presence at the proceeding is required unless the court orders otherwise. Pa.R.Crim.P. 500(A)(4) (providing that "[t]he testimony shall be taken in the presence of the court, the attorney for the Commonwealth, the defendant(s), and defense counsel, unless otherwise ordered."). However, this is not persuasive. The Rule does not prohibit any individual or group from attending a Rule 500 proceeding, but rather requires the presence of certain individuals. In light of the strong preference in favor of open criminal procedures, I would not make an inferential leap toward excluding the press and public from a criminal proceeding without much clearer evidence.

¶ 8 Selenski also contends that Subsection (A)(5) requires denying the relief sought by The Times Leader. According to Selenski, this provision and the comment to Rule 500 reflect an implicit recognition of a compelling state interest in closing Rule 500 proceedings. Subsection (A)(5) provides that "[t]he preserved testimony shall not be filed of record until it is offered into evidence at trial or other judicial proceeding." Pa.R.Crim.P. 500(A)(5). In relevant part, the comment suggests that paragraph (A)(5) "[is] intended to guard against pretrial disclosure of potentially prejudicial matters." Pa.R.Crim.P. 500, *Comment.* Although the Court will consider the comments to Rules of Criminal Procedure when interpreting the meaning of a particular Rule, they have not been adopted by the Pennsylvania Supreme Court. *Commonwealth v. Lutes,* 793 A.2d 949, 959 n. 4 (Pa.Super.2002), *citing Commonwealth v. Dougherty,* 451 Pa.Super. 248, 679 A.2d 779, 783 (1996). In my view, paragraph (A)(5) does not obviate the constitutional inquiry. The United States Constitution requires a particularized inquiry into whether there exists specific evidence of prejudice and whether there is no less intrusive means of eliminating such prejudice. *See Criden,* 675 F.2d at 554–557 (rejecting the generalized argument that "there was a reasonable likelihood that dissemination of information which might be disclosed in the closed hearing would impair the defendants' right to a fair trial").

¶ 9 In response, *Amicus* notes that the Rule also requires that the parties and counsel are present during the testimony and conditionally requires the presence of the judge, unless the parties agree otherwise. According to *Amicus,* a Rule 500 proceeding bears all the hallmarks of a formal judicial proceeding to which the presumption of public access should attach. The Times Leader adds that counsel is free to cross-examine the witness and make objections. *See* Pa.R.Crim.P. 500, *Comment* ("When testimony is taken under this rule, the proceeding should be

adversarial, and afford the parties full opportunity to examine and cross-examine the witness. Counsel should not reserve objections for time of trial.").

¶ 10 In the common law context, the fact a document is not filed of record is relevant but not determinative as to whether the document should be considered a public judicial document. *Commonwealth v. Upshur*, 592 Pa. 273, 924 A.2d 642, 650 (2007) ("[T]he status of materials as 'part of the record' or 'filed with the court,' though relevant, is not necessarily dispositive when deciding whether an item is a public judicial record or document."), *quoting United States v. Martin*, 746 F.2d 964, 969 (3d Cir.1984). In the constitutional context, the First Amendment provides a more robust right of access than that which is found at common law. *Long*, 922 A.2d at 897, 898 n. 6.

¶ 11 The Commonwealth suggests that a Rule 500 proceeding is comparable to civil pretrial discovery. The Commonwealth cites *Palm Beach Newspapers, Inc. v. Burk*, 504 So.2d 378 (Fla.1987), which concluded that "the press does not have a first amendment right to be present at discovery depositions or to obtain copies of depositions which are not filed with the court." *Palm Beach Newspapers*, 504 So.2d at 382. A Rule 500 proceeding is akin to a deposition. Depositions are generally held in private. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). However, the comparison to pretrial discovery is not dispositive. "Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that *the sole purpose of discovery is to assist trial preparation.*" *United States v. Wecht*, 484 F.3d 194, 209 (3d Cir.2007), *quoting United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir.1986) (emphasis added). Trial preparation is not the purpose of a Rule 500 proceeding. Rather, the purpose of a Rule 500 proceeding is the preservation of testimony for use at trial where it is in the interest of justice that the witness' testimony be preserved. Pa.R.Crim.P. 500(A)(1).[3]

¶ 12 As ably noted by the majority, the Pennsylvania Supreme Court endorsed the increased formality in the manner in which parties conduct a proceeding to preserve testimony as preservative of a criminal defendant's right of confrontation. *See* Majority Opinion, at 499 n. 9 (discussing *Commonwealth v. Stasko*, 471 Pa. 373, 370 A.2d 350, 353–355 (1977)). Our Supreme Court further noted that "confrontation is essential to the elicitation of reliable testimony." *Stasko*, 370 A.2d at 353. Reliable testimony is the foundation of the factfinding process. In my view, just as Rule 500 provides a procedural framework which protects against the potential erosion of a criminal defendant's fundamental rights, public scrutiny of Rule 500 proceedings safeguards the integrity of this process. A witness testifying with the knowledge that his assertions will be disseminated immediately to the public is more likely to be truthful than one who believes his testimony may or may not be made public at a time when he can no longer be confronted or sanctioned for falsehood.[4]

---

**3.** The majority defines deposition to mean out-of-court testimony reduced to writing and used either for discovery purposes or for trial, without commenting on the importance of this distinction. Majority Opinion, at 498 n. 7. I find the distinction significant. In contrast, the majority's conclusion embraces the Commonwealth's argument, built upon a premise that Rule 500 proceedings are nothing more than "informal discovery." *See* Commonwealth's Brief, generally; Majority Opinion, at 500. Fundamentally, that premise is flawed. The purpose of discovery is to assist trial preparation, whereas the purpose of a Rule 500 proceeding is the preservation of trial testimony.

¶ 13 Accordingly, I differ from the majority. I believe there is no historical evidence which supports a conclusion that Rule 500 proceedings have traditionally been held open to the press and public. Yet, the provisions of Rule 500 suggest a formal judicial proceeding, subject to modifications and degrees of formality, and to which attaches the presumptive right of access.

¶ 14 Focusing on the logic inquiry, I note the following:

> The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that anyone is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.

*Long*, 922 A.2d at 899–900, *quoting Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 508, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (*"Press Enterprise I "*). The same benefits identified in *Globe* are relevant here. *See Globe*, 457 U.S. at 605–06, 102 S.Ct. 2613 (identifying the quality and integrity of the factfinding process, the appearance of fairness, and public respect for the judicial process as "particularly significant" to the proper functioning of the judicial process). While the quoted language refers to trials, the advantages cited apply as well to the taking of testimony to be used at a future trial.

¶ 15 The Commonwealth suggests that permitting public access to Rule 500 pro-

ceedings risks the dissemination of irrelevant or inadmissible information, thus tainting the jury pool and undermining defendants' right to a fair trial. "[T]he mere statement of one party that allowing public dissemination of a record or document will prejudice the trial, without additional evidence, does not warrant a denial of access." *Upshur*, 924 A.2d at 652. The asserted risk is no different than that presented by open preliminary hearings and suppression hearings. Moreover, notwithstanding the trial court's comments to the contrary, wide ranging *voir dire* or a change of venue or *venire* are reasonable alternatives to closure. *Upshur*, at 652; *Martin*, 746 F.2d at 973–74.

¶ 16 In a similar vein, the majority concludes that public access to Rule 500 proceedings could create a costly and time-consuming process which serves no positive role in the functioning of our criminal justice system. I respectfully disagree. These arguments have previously been evaluated and rejected. Speculative threats or concerns do not sufficiently justify the curtailment of the public right of access to criminal proceedings:

> Though, in our constitutional scheme, no right ranks higher than the right of the accused to a fair trial, speculative threats to that right have never been sufficient to overcome either First Amendment rights to attend and report on trials.

¶ 17 *United States v. Martin*, 746 F.2d 964, 972 (3d Cir.1984) (internal quotations omitted); *see also Upshur*, at 652. Therefore, in my view Rule 500 proceedings presumptively should be open.

¶ 18 Having determined that the public has a qualified First Amendment right of

---

4. The Commonwealth filed a motion to preserve the testimony of Robert Steiner, who "is an elderly witness in ill health" and "may or may not be available at the time of trial." Trial Court Opinion, at 1 (July 15, 2009).

access to Rule 500 proceedings, I now briefly address the trial court's decision to close the Rule 500 proceeding taking Steiner's testimony. The right of access to criminal proceedings is not absolute. *Long*, at 900, *citing Press–Enterprise II*, 478 U.S. at 13, 106 S.Ct. 2735.

> [A] trial court can close the proceedings when it demonstrates an overriding interest "to preserve higher values," including the right of the accused to a fair trial. In such instances, the closure must be narrowly tailored to serve the interest in question. Consequently, the right of access is only a "qualified right."

*Id., citing Press Enterprise II*, at 14, 106 S.Ct. 2735. "The burden of showing that closure is warranted under the circumstances is on the party seeking to prevent access." *Upshur*, at 651. A trial court's decision to close proceedings to the public or regarding access to a particular item must be reviewed for abuse of discretion. *Upshur*, at 647, *citing Fenstermaker*, 530 A.2d at 420.

¶ 19 At the hearing on The Times Leader's motion, the Commonwealth and Selenski argued that public access to the Rule 500 proceeding risked the public dissemination of inadmissible or prejudicial information. They contend this public dissemination would negatively impact the ability to select a fair and impartial jury. The trial court agreed, noting its concern that it would be required to supervise an extensive *voir dire* or move the trial to a different venue. The trial court further noted the potential expense which would be incurred if a jury pool was assembled from out-of-county residents.

¶ 20 These considerations do not rise to the level required to justify excluding the public and press from a pretrial criminal proceeding. Therefore, I would reverse the order of the trial court.