NO. 4-05-0509

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

MAURICE LaGRONE, JR.,

Defendant-Appellee,

and

THE ASSOCIATED PRESS; THE PANTAGRAPH; 

and THE HERALD & REVIEW,

Intervenors-Appellants.

)

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

De Witt County

No. 03CF101

Honorable

Stephen H. Peters,

Judge Presiding.

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

In this case, we review the trial court's decision to close hearings on certain motions 
in
 
limine
 to suppress evidence in this criminal case.  For the following reasons, we reverse.

I. BACKGROUND

In September 2003, Amanda Hamm's three young children drowned in Hamm's car when it sank into Clinton Lake.  The State later charged Hamm's boyfriend, defendant, Maurice LaGrone, Jr., and Hamm with the first degree murder of the children.  At some point early in the proceedings, the trial court transferred venue from De Witt County to Champaign County.  

In February 2005, defendant filed (1) a motion 
in
 
limine
 to bar testimony from minors D.F. and M.F. and (2) a motion for leave to file proffers of evidence under seal.  Later in February 2005, the intervenors, the Associated Press, The Pantagraph, and the Herald & Review, filed petitions to intervene and for access.  

In March 2005, defendant filed (1) a motion 
in
 
limine
 to bar Hamm's statements to police, (2) a motion 
in
 
limine
 to bar certain opinion testimony by lay witnesses, (3) a motion 
in
 
limine
 to bar certain hearsay statements of Austin Brown and Christopher Hamm (two of the victims), (4) a motion 
in
 
limine
 to bar testimony of Shane Senters, and (5) a motion to seal defendant's motion to bar certain evidence as to his "character attributes."  Later in March 2005, defendant filed a motion to close the following proceedings to the public:  (1) the hearing on his motion to bar the testimony of D.F. and M.F., (2) the hearing on his motion to bar Hamm's statements, (3) the hearing on his motion to bar evidence as to his character attributes, and (4) the hearing on his motion to bar Austin's and Christopher's statements about him.  Later that month, the trial court granted the intervenors' petition to intervene.

At the May 2005 hearing on defendant's motion to close proceedings, the only pretrial issues that defendant sought to adjudicate in closed proceedings were (1) the admissibility of four statements made by Christopher and Austin and (2) the admissibility of certain evidence of defendant's character attributes.  After hearing counsel's arguments, the trial court announced its decision, as follows:

"Okay.  I have read the motions, together with the motions that were tendered.  Some information regarding the nature of the statements that the motions relate to, nature not only of the statements, but also as far as the motion relating to character attributes, some of the attributes and some of the events that have occurred to cause this motion to arise.  We are not in this instance looking at broad categories of statements.  We are looking at[,] as counsel has indicated[,] two or three specific statements from the victims in this case, and as I review the second motion, we are looking at a couple of character attributes which will need to be determined as to whether or not those attributes can be admitted in this case.  Admittedly, if the nature of those get out to the press and they are not admitted, then I think it does tend to present a problem in selecting a jury--more than a potential problem.  I have over the past year and a half read a number of accounts--certainly not every account of events that have occurred during the course of pre[]trial proceedings in this case and in virtually every one of those, there is a synopsis of events that has taken place up until this point, so I don't, I think that the problem comes in the constant repeat of evidence or matters that a jury won't hear but does so hear if this is a public hearing.  It is a matter as to these two issues that I believe would jeopardize the fair trial rights of the defendant in this cause.  There has been by way of proffer sufficient evidence presented to me to show me the facts that are going to be argued here.  I recognize that these facts--I don't know all of them, myself; I know generally, general information about them, but I don't know everything there is to know about them.  I will probably learn some of that during the motion and probably not all of it until the trial takes place.  I think that this would jeopardize the selection of a jury.  At this point, I see no alternative other than at least for these two motions to have a closed hearing.  It is not going to be a practice that will take place on a consistent basis, but in these two instances, it would be appropriate.  I know that there is some information that the State[,] at least according to counsel here today[,] has indicated that the State will confess and so I think in relation to the remaining evidence or the remaining matters that will be discussed during the course of these motions, that closure is essential to preserve the higher value of a fair trial of the defendant.  For these two motions relating to these very specific issues, I will allow the motion and the matter will be closed, a closed hearing.  I will indicate[,] however, that upon selection of the jury, the transcript of this hearing will be released."

In June 2005, following the closed hearings, the trial court entered an order which, in pertinent part, granted in part each of defendant's two motions 
in
 
limine
.

This interlocutory appeal followed.

II. THE TRIAL COURT'S DECISION TO CLOSE THE HEARINGS

The intervenors argue that the trial court erred by closing the hearings on defendant's motions 
in
 
limine
 to suppress (1) the statements of Austin and Christopher and (2) evidence of certain character attributes of defendant.  Specifically, they contend that the court failed to comply with the requirements set forth in 
Press-Enterprise Co. v. Superior Court
, 478 U.S. 1, 92 L. Ed. 2d 1, 106 S. Ct. 2735 (1986) (
Press-Enterprise II
), by failing to make specific on-the-record findings (1) demonstrating that closure was essential to preserve defendant's fair-trial rights and (2) showing that no reasonable alternative to closure would adequately protect defendant's fair-trial rights.  We agree.  

Initially, we acknowledge that an argument could be made that the issue before us is moot, given that the closed 
in
 
limine
 hearings have already been held.  However, we conclude that the issue qualifies for review because (1) it involves a question of great public interest and (2) the restrictions the trial court imposed are capable of repetition and evading review.  See 
In re A Minor
, 127 Ill. 2d 247, 257-58, 537 N.E.2d 292, 296 (1989).

Open criminal proceedings play an important role in our society, and "[c]losed proceedings, although not absolutely precluded, must be rare and only for cause shown that outweighs the value of openness."  
Press-Enterprise Co. v. Superior Court
, 464 U.S. 501, 509, 78 L. Ed. 2d 629, 638, 104 S. Ct. 819, 823 (1984) (
Press-Enterprise I
).  When balancing the right of the defendant to a fair trial against the public right of access to criminal proceedings, "[i]t is *** important to remember that these interests are not necessarily inconsistent."  
Press-Enterprise II
, 478 U.S. at 7, 92 L. Ed. 2d at 9, 106 S. Ct. at 2739.  The United States Supreme Court has repeatedly recognized that opening the process to neutral observers is an important means of assuring the fairness of criminal proceedings.  
Press-Enterprise II
, 478 U.S. at 7, 92 L. Ed. 2d at 9, 106 S. Ct. at 2739.  Accordingly, a high threshold must be crossed to justify the closure of criminal proceedings.

In 
Press-Enterprise II
, 478 U.S. 1, 92 L. Ed. 2d 1, 106 S. Ct. 2735, the trial court had granted a murder defendant's request to exclude the public and press from his preliminary hearing.  The Supreme Court held that the first amendment right of access to criminal proceedings applied to preliminary hearings in California.  
Press-Enterprise II
, 478 U.S. at 13, 92 L. Ed. 2d at 13, 106 S. Ct. at 2743.  In defining the right of access, the Court relied on the same analysis it had used in 
Press-Enterprise
 
I
 to determine the propriety of closing 
voir
 
dire
 in a criminal trial, explaining as follows: 

"[T]he proceedings cannot be closed unless specific, on[-]the[-]record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'  [Citations.]  If the interest asserted is the right of the accused to a fair trial, the preliminary hearing shall be closed only if specific findings are made demonstrating that, first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair[-]trial rights."  
Press-Enterprise II
, 478 U.S. at 13-14, 92 L. Ed. 2d at 13-14, 106 S. Ct. at 2743.

Although the Court in 
Press-Enterprise II
 held only that this standard applies to California preliminary hearings, "it has been viewed as the appropriate standard for 'fair-trial' closures of all parts of the criminal process to which the [f]irst [a]mendment [r]ight of access applies."  W. LaFave, J. Israel & N. King, Criminal Procedure §23.1(e), at 412-13 (2d ed. 1999); see also 
Waller v. Georgia
, 467 U.S. 39, 47, 81 L. Ed. 2d 31, 39, 104 S. Ct. 2210, 2216 (1984) (in which the Supreme Court applied the same standard to closure of a pretrial hearing on the defendant's motion to suppress wrongfully obtained evidence).  Accordingly, the standard set forth in 
Press Enterprise II
 is the standard we will apply in reviewing the trial court's decision to close the proceedings on defendant's motions 
in
 
limine
. 

In accordance with 
Press Enterprise II
, we turn to the record to determine whether the trial court made specific factual findings showing that (1) a substantial probability existed that defendant's right to a fair trial would be prejudiced by publicity that closure would prevent and (2) reasonable alternatives to closure could not adequately protect defendant's fair-trial rights.  See 
Press-Enterprise II
, 478 U.S. at 13-14, 92 L. Ed. 2d at 13-14, 106 S. Ct. at 2743.

The record of the trial court's remarks shows that the court made the following findings:  (1) if the evidence was made public but ruled inadmissible, it would "tend" to present "more than a potential problem" in selecting a jury; (2) the history of publicity related to the case showed that the media was likely to constantly repeat the inadmissible evidence; and (3) the court saw no alternative to closure. 

We agree with the intervenors that the trial court's specific findings do not constitute a sufficient basis for closure under 
Press-Enterprise II
.  As the Court wrote, "[t]he [f]irst [a]mendment right of access cannot be overcome by the conclusory assertion that publicity might deprive the defendant" of his fair-trial right.  
Press Enterprise II
, 478 U.S. at 15, 92 L. Ed. 2d at 14, 106 S. Ct. at 2743.  The trial court's finding that the inadmissible evidence in the hands of the media would "tend" to create "more than a potential problem" selecting a jury is not a fact-specific finding showing a substantial probability that an impartial jury could not be chosen.  Nor is it a finding that provides this court with sufficient factual material to conduct a meaningful review of the trial court's decision.  See 
Press Enterprise I
, 464 U.S. at 510, 78 L. Ed. 2d at 638, 104 S. Ct. at 824 (holding that the interest to be served by closure "is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered").   

We acknowledge that the trial court made the specific factual finding that in the past, the media had frequently repeated details about this case.  Thus, the court was concerned over the possibility that inadmissible evidence would be frequently repeated by the media.  However, a speculative concern for how the media will use information should not justify the closure of criminal proceedings.  The potential 
always
 exists that the media will misuse, misstate, or misconstrue the facts in reporting.  A concern that the press will misuse inadmissible information is not sufficient to support a finding that a substantial probability exists that the defendant's fair-trial rights will be impinged.

We further agree with the intervenors that the trial court failed to make specific factual findings supporting its conclusion that no alternatives to closure existed.  In 
Press Enterprise I
, the Supreme Court concluded that the trial court could not constitutionally close 
voir
 
dire
 proceedings because the trial court's order denying access failed to consider whether alternatives were available.  
Press Enterprise I
, 464 U.S. at 511, 78 L. Ed. 2d at 639, 104 S. Ct. at 824-25.  In this case, the trial court made no mention of alternatives to closure other than to state that it saw none.  No finding was made as to why another change of venue could not occur or why the information at issue was so prejudicial that impartial jurors could not be chosen through 
voir
 
dire
.

The trial court's findings, in addition to being vague and conclusory, fail to address the question that should lie at the heart of a trial court's decision to close a criminal proceeding.  That question is not whether the information would taint potential jurors, but whether the circumstances of access would make it so that 
voir
 
dire
 could not remedy any taint.  Widespread publicity does not necessarily result in widespread knowledge among potential jurors of the facts reported (see 
State v. Schaefer
, 157 Vt. 339, 352, 599 A.2d 337, 345 (1991)), and 
voir
 
dire
 is the preferred method for guarding against the effects of pretrial publicity (see 
In re Charlotte Observer
, 882 F.2d 850, 855 (4th Cir. 1989)).  See also 
Press-Enterprise II
, 478 U.S. at 15, 92 L. Ed. 2d at 14, 106 S. Ct. at 2743 ("Through 
voir
 
dire
, cumbersome as it is in some circumstances, a court can identify those jurors whose prior knowledge of the case would disable them from rendering an impartial verdict").  Thus, the trial court's factual findings must show that the pretrial publicity would inflame and prejudice the entire community such that even through 
voir
 
dire
, an unbiased jury could not be seated.  The trial court's findings in this case did not support that conclusion.

Finally, we note that in this case, the trial court had already changed venue, no doubt to provide access to a jury pool from which an impartial jury could be chosen.  In such cases, the likelihood that the court would need to conduct proceedings in secret is (or at least should be) dramatically diminished.  Thus, under these circumstances, an even greater need exists for the trial court to make specific factual findings as to why closure was warranted.

In conclusion, we reiterate that in criminal proceedings, openness is the norm and closure should occur only in rare cases.  We recognize that changing venue can be inconvenient for the court and the parties.  However, when balanced against the implications of either compromising a defendant's right to a fair trial or limiting the public's right of access (which in itself diminishes a defendant's fair-trial protection), concerns for convenience carry little to no weight.  To ensure that closure occurs only when it is truly warranted, the Supreme Court in Press-Enterprise II established a rigorous standard for trial

courts to meet before closing proceedings.  Because the trial court in this case failed to meet that standard, we reverse.

III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment.

Reversed.

APPLETON and McCULLOUGH, JJ., concur.