Filed 8/13/08          NO. 4-08-0136

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
|   Plaintiff-Appellee, | ) | Circuit Court of |
|   v. | ) | McLean County |
| JEFFREY PELO, | ) | Nos. 06CF581 |
|   Defendant-Appellee, | ) |      06CF679 |
|   and | ) | |
| THE PANTAGRAPH and EDITH BRADY LUNNY, | ) | Honorable |
|   Intervenors-Appellants. | ) | Robert Freitag, |
| | ) | Judge Presiding. |

_____

JUSTICE COOK delivered the opinion of the court:

Interveners-appellants, The Pantagraph newspaper and its reporter Edith Brady Lunny (Pantagraph), filed a petition to intervene and gain access to an evidence deposition in a criminal case, People v. Pelo (Nos. 06-CF-581 and 06-CF-679 (Cir. Ct. McLean Co.)).  On November 19, 2007, before the trial date in Jeffrey Pelo's case had been set, the trial court granted Pantagraph's petition to intervene but denied access to the evidence deposition.  Pantagraph appealed.  We affirm.

I. BACKGROUND

The underlying criminal case, People v. Pelo (Nos. 06-CF-581 and 06-CF-679), involves an accused stalker who allegedly committed sexual assault against several different victims.  Pelo was first taken into custody for the underlying criminal case in June 2006.  A potential witness in the case, Scott Galuska, reportedly saw a person near the residence of one of the victims.

Because Galuska was scheduled to leave the country for military service, the State moved to depose Galuska in an evidence deposition (134 Ill. 2d R. 414). The defense did not object and the trial court entered an agreed order, sanctioning the right of the parties to take the deposition.

In September 2007, the parties conducted Galuska's deposition in the courthouse. The location of the deposition was dictated by the fact that defendant Pelo, who had a right to be present to confront and cross-examine witnesses against him, was in custody. Following the deposition, the trial court ordered that the original, unedited deposition videotapes would be held in the evidence vault of the circuit clerk. The docket entry that orders the tapes to the evidence vault references an accompanying written order, but the record does not contain that order.

Pantagraph had been reporting the facts and circumstances surrounding the Pelo case. Pantagraph learned that Galuska reportedly saw a person near the residence of one of the stalking victims and that Galuska had recently been deposed. Pantagraph filed a petition to intervene and gain access to the unedited tapes of the Galuska deposition. In its petition to intervene, Pantagraph argued that (1) it had a right to intervene pursuant to section 2-408 of the Code of Civil Procedure (735 ILCS 5/2-408(b) (2006)), and (2) the Fourth District has recog-

nized that intervention is the appropriate method for newspapers to present access issues to the courts, citing People v. LaGrone, 361 Ill. App. 3d 532, 838 N.E.2d 142 (2005); 735 ILCS 5/2-408(b) (West 2006) ("Upon timely application anyone may in the discretion of the court be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common"). In its companion petition to gain access to Galuska's deposition, Pantagraph cited several federal civil cases supporting the disclosure of pretrial discovery materials, citing, among others, American Telephone & Telegraph Co. v. Grady, 594 F.2d 594, 596 (1979), and Fed. R. Civ. P. 26(c) ("General Provisions Governing Discovery: Duty of Disclosure; Protective Orders"). Pantagraph further argued that, due to the nature of the underlying criminal case, the contents of Galuska's deposition were potentially of vital importance to the public.

On November 19, 2007, before a date for Pelo's criminal trial had been set, the trial court held a hearing on Pantagraph's petitions to intervene and gain access. The court granted Pantagraph's petition to intervene for the purpose of requesting access to the Galuska deposition, but it ultimately denied Pantagraph access to the Galuska deposition. In so finding, the court noted that the taking of an evidence deposi-

tion in a criminal case is an unusual occurrence. The court noted that, in these circumstances, the deposition was not a scheduled court hearing open to the public, and no significance should be afforded to the fact that the deposition took place in the courthouse as a matter of convenience to defendant Pelo. As the court stated: "It was *** a gathering of attorneys and the parties and the witness for the taking of an evidence deposition. The [c]ourt was not involved."

The court further stated that, in criminal cases, evidence is not in the public realm until it has been admitted at trial. The court cited Supreme Court Rules 415 (134 Ill. 2d R. 415) and 207 (166 Ill. 2d $. 207) for this proposition, which govern the custody and filing of depositions and other discovery materials:

> "[The Galuska deposition] has not been admit-
> ted into evidence. It has not been received
> by the [c]ourt. It is simply housed in the
> clerk's office because Supreme Court Rules
> [415 and 207] require it to be housed there.
> It is, therefore, this [c]ourt's opinion that
> the deposition is a single piece of evidence;
> that releasing it at this point would essen-
> tially suggest that, that anybody who wants
> to look at evidence in any criminal case

would have a right to do so. I don't think there is any [f]irst-[a]mendment[,] [right-of-access] issue here because *** nothing has occurred in open court with relation to this deposition to this point."

However, the court added that if, at a later time, Galuski's deposition were presented to the jury or if Galuski testified, Pantagraph would of course be free to report on the matter at will.

This interlocutory appeal followed. 188 Ill. 2d R. 307(a)(1) (allowing interlocutory appeal as of right in the event of an interlocutory order of the court refusing an injunction). Pantagraph filed an initial brief, the State filed a brief in response, and Pantagraph filed a reply brief. Defendant-appellee Pelo did not file a brief. As of April 8, 2008, the date Pantagraph filed its initial appellate brief, the date for Pelo's criminal trial still had not been set.

## II. ANALYSIS

### A. Jurisdiction Under Rule 307(a)(1)

Pantagraph argues that the trial court's order denying Pantagraph access to the Galuski videotape deposition "effectively enjoined" it and the public from obtaining a copy of the tapes, thereby triggering coverage under Rule 307(a)(1). 188 Ill. 2d R. 307(a)(1). Rule 307(a)(1) allows an appeal to be

taken to the appellate court from an interlocutory order of the trial court "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction."  188 Ill. 2d R. 307(a)(1).  An injunction is a "'prohibitive, equitable remedy issued or granted by a court at the suit of a party complainant, directed to a party defendant in the action, or to a party made a defendant for that purpose, forbidding the latter to do some act *** which he is threatening or attempting to commit.'"  People v. Reynolds, 274 Ill. App. 3d 696, 698, 654 N.E.2d 535, 537 (1995), quoting Black's Law Dictionary 705 (5th ed. 1983).

As a threshold question, the State challenges this court's jurisdiction to consider Pantagraph's interlocutory appeal under Rule 307(a)(1). 188 Ill. 2d R. 307(a)(1).  The question to ask in determining whether this court has jurisdiction under Rule 307(a)(1) is whether the court's denial of access can be said to be an "injunction" as defined above.  To answer this question, we must examine the merits of the case, i.e., whether the presumptive right of public access to judicial proceedings and documents that have been filed with the court applies to the Galuska evidence deposition.  If the presumptive right of access does not apply to the circumstances of this case, then the trial court has not "enjoined" Pantagraph from accessing what it would otherwise have a right to examine.  It seems illogical to decide a case on jurisdictional grounds if one needs

to reach the merits of the case in order to do so. See <u>Nelson v. Miller</u>, 11 Ill. 2d 378, 392, 143 N.E.2d 673, 680 (1957) (stating it would be an unusual result to have the jurisdiction of the court depend upon the outcome of a trial on the merits). Therefore, we will decide this case on the merits.

We note, however, that the State also challenges Pantagraph's jurisdiction by implying that Pantagraph should not have intervened in a criminal case to assert a right of access to the deposition but instead should have filed a separate civil action, such as a complaint for declaratory judgment, to obtain access to the evidence deposition. The State cites <u>State v. Cianci</u>, 496 A.2d 139, 146 (R.I. 1985), which held that permissive intervention "has no place in a criminal proceeding." The State's citation to <u>Cianci</u> is misleading because <u>Cianci</u> concedes that other jurisdictions find intervention to be the proper vehicle for a newspaper to allege a constitutional and/or common-law violation of its right of access to all judicial proceedings, including depositions. <u>Cianci</u>, 496 A.2d at 146 ("there are jurisdictions that have permitted newspapers to intervene in criminal prosecutions for the limited purpose of questioning an order of the trial court sealing depositions"). Illinois seems to be one of those jurisdictions that takes interlocutory appeals concerning right-of-access issues. In <u>LaGrone</u>, the court allowed the press to intervene in a first-degree murder case for the

purpose of questioning an order of the trial court denying public access to a hearing on a motion in limine. LaGrone, 361 Ill. App. 3d 532, 838 N.E.2d 142. When the trial court denied the newspaper access, an interlocutory appeal followed. LaGrone, 361 Ill. App. 3d at 534, 838 N.E.2d at 145.

B. On the Merits: No Right of Access

The first amendment embodies a right of access to court records and criminal proceedings. Skolnick v. Altheimer & Gray, 191 Ill. 2d 214, 231-32, 730 N.E.2d 4, 16 (2000) (regarding court records in general); LaGrone, 361 Ill. App. 3d at 535, 838 N.E.2d at 145 (regarding criminal proceedings). This constitutional right presumes the public's right to inspect court records that have "'historically been open to the [press and] public'" and the disclosure of which would further the court proceeding in the case at hand. Skolnick, 191 Ill. 2d at 232, 730 N.E.2d at 16, quoting United States v. Corbitt, 879 F. 2d 224, 228 (7th Cir. 1989) (bracketed words eclipsed in Skolnick but appearing in Corbitt). The presumption can be rebutted by demonstrating that suppression of the public record is necessary to protect a higher value and is narrowly tailored to serve that interest. Skolnick, 191 Ill. 2d at 232, 730 N.E.2d at 16.

In addition to the constitutional right of access, a parallel common-law right of access has developed. Skolnick, 191 Ill. 2d at 230, 730 N.E.2d at 15. Under common law, a presump-

tion exists in favor of allowing the public to inspect and copy public records and documents, including judicial records and documents. Skolnick, 191 Ill. 2d at 230, 730 N.E.2d at 15. The right of access to court records enables the public to monitor the functioning of the courts, thereby ensuring quality, honesty, and respect for our legal system. Skolnick, 191 Ill. 2d at 230, 730 N.E.2d at 16. However, the public's right of access is not absolute, and the court has the supervisory power over its own records and files to deny access at its discretion where the court files may become a vehicle for improper purposes. Skolnick, 191 Ill. 2d at 231, 730 N.E.2d at 16.

Finally, the Illinois legislature has codified the public's right of access as follows:

> "All records, dockets[,] and books required by law to be kept by such clerks shall be deemed public records, and shall at all times be open to inspection without fee or reward, and all persons shall have free access for inspection and examination to such records, dockets[,] and books, and also to all papers on file in different clerks' offices and shall have the right to take memoranda and abstracts thereto." 705 ILCS 105/16(6) (West 2006).

It does not seem to us that the evidence deposition at issue here is a "judicial record" or part of the "criminal proceeding itself" to which the public has a constitutional, common-law, or statutory right of access.  As stated by the trial court, the unedited evidence deposition at issue here has not been submitted into evidence and has not been played in open court.

The taking of an evidence deposition in a criminal trial is an unusual occurrence.  Rule 414 governs the taking of evidence depositions in a criminal case:

> "If it appears to the court in which a
> criminal charge is pending that the deposi-
> tion of any person other than the defendant
> is necessary for the preservation of relevant
> testimony because of the substantial possi-
> bility it would be unavailable at the time of
> hearing or trial, the court may, upon motion
> and notice to both parties and their counsel,
> order the taking of such person's deposition
> under oral examination or written questions
> for use as evidence at a hearing or trial."
> 134 Ill. 2d R. 414(a).

An evidence deposition in a criminal case shall be taken in accordance with the rules of taking an evidence deposition in a

civil case. 134 Ill. 2d R. 414(b). The defendant and defense counsel have the right to confront and cross-examine any witness whose deposition is taken. 134 Ill. 2d R. 414(e). The Federal Rules of Criminal Procedure contain nearly an identical rule for the taking of evidence depositions in a criminal case. See Fed. R. Crim. P. 15.

Although we have found no published Illinois case that has ruled on whether a right of access attaches to evidence depositions in a criminal case before the deposition has been introduced at hearing or at trial, several federal jurisdictions relying on Rule 15 hold that there is no right of access under such circumstances. Fed. R. Crim. P. 15. Some courts have held that the right of access never attaches to the videotape of the evidence deposition itself, that the media cannot copy or broadcast it, and that the media, which has no right over and above that of the general public, may only have access to the evidence deposition at the time and in the manner it was delivered to the jury in the courtroom. See In re Application of American Broadcasting Cos., 537 F. Supp. 1168, 1170-72 (D.C. Cir. 1982) (where Jodie Foster moved to prevent public access to her evidence deposition in a criminal prosecution against John Hinckley, Jr., the court held that the recording of the deposition was not encompassed by the common-law right of access to judicial records and that broadcasters could not copy the recording of the deposi-

tion); <u>United States v. McDougal</u>, 103 F.3d 651, 652 (8th Cir. 1996) (where media organizations appealed from the denial of their applications to access a recording of President Clinton's deposition testimony, the court held that, as a matter of law, the videotape itself was not a judicial record to which the right of public access attached).  Even more liberal interpretations of the right to access have not allowed the media access to a taped evidence deposition with all the copyrights that typically come with the right of access until <u>after</u> the video deposition has been shown to the jury.  See <u>In re Application of CBS, Inc.</u>, 828 F.2d 958, 959-60 (2d Cir. 1987) (reasoning that the press had a right to attend open court and view the videotape for itself).

The facts in <u>McDougal</u> provide a useful illustration. In <u>McDougal</u>, the President's evidence deposition was taken, and the court gave the parties and the media 30 days to file briefs as to how the deposition would be used at trial.  <u>McDougal</u>, 103 F.3d at 653.  During the 30-day period, counsel for the parties reviewed the transcript of the entire deposition and agreed to edit certain portions.  <u>McDougal</u>, 103 F.3d at 653.  The transcript and the videotape were edited accordingly, and the edited version of the deposition was played to the jury in open court. <u>McDougal</u>, 103 F.3d at 653.  The courtroom was filled to capacity, and the media had an opportunity to view the video at that time. The edited written transcripts of the deposition were admitted

into evidence, made part of the record, and released to the public after trial.  McDougal, 103 F.3d at 653.  The video itself was never entered into evidence, and the right of access to the video itself never attached.  McDougal, 103 F.3d at 656.

As in McDougal, it is still possible that the deposition at issue here may be edited before any form of it is entered into evidence and/or read to the jury.  Rule 414 provides that the evidence deposition may be used as evidence, but does not provide that it automatically attains the status of evidence and is part of the judicial record just by being taken.  134 Ill. 2d R. 414.  A judge was not present when witness Galuski's evidence deposition took place.  Galuski may have made inadmissible statements in the deposition that will be excluded if and when the State seeks to admit some or all of the deposition.

The cases cited by Pantagraph do not change our determination.  In United States v. Berger, 990 F. Supp 1051 (C.D. Ill. 1997), reversed and remanded by In re Associated Press, 162 F.3d 503 (7th Cir. 1998), the court considered the media's right to access the Illinois Governor's evidence deposition, which was taken in camera during the middle of the trial.  There, the underlying criminal case involved a defendant charged with 16 counts of mail fraud.  Berger, 990 F. Supp. at 1052.  Due to extenuating circumstances after the trial had already begun, including an ill juror and the Governor's travel schedule, the

- 13 -

parties agreed that the Governor's testimony would be taken by video deposition and played to the jury at the appropriate time in the trial. Berger, 990 F. Supp. at 1052. The newspapers moved for access to the Governor's deposition before it had been played to the jury. Berger, 990 F. Supp. at 1052. The court held the newspapers could not view the videotape until the jury did, noting that early release of the deposition could prejudice the defendant's right to a fair trial where the jury had not been sequestered, especially if the defendant decided not to offer the deposition as evidence at trial after all. Berger, 990 F. Supp. at 1053-54.

Pantagraph contends Berger indicates that the right of access applies to an evidence deposition before it is played at trial and that the only reason the Berger court did not allow access was due to the potential for prejudice. We disagree. The Berger court noted that other jurisdictions have held that the common-law right of access does not extend to a videotaped deposition. Berger, 990 F. Supp. at 1054 n.3. It seems as though the Berger court found the question of prejudice to be the easier way to refute the newspaper's petition for access, but it did not rule one way or the other whether the right of access actually attached. Berger, 990 F. Supp. at 1054. Moreover, Berger is distinguishable because the videotaped deposition in that case was taken in camera, whereas the deposition in the

instant case had no judicial supervision whatsoever.

The remainder of the cases that Pantagraph cites in support of the proposition that a right of access exists are slightly off point, as they are civil cases that do not involve the media's right to intervene and gain access to evidence depositions in criminal cases. See, for example, American Telephone, 594 F.2d at 595 (concerning modification of a protective order so that nonparty litigating similar issues against the defendant in a separate case could have retroactive access to discovered documents for purposes of economy); Fed. R. Civ. P. 26(c) ("General Provisions Governing Discovery: Duty of Disclosure; Protective Orders").

Because the right of access has not attached to the Galuski evidence deposition, the trial court did not err in denying Pantagraph access to the videotaped deposition.

### III. CONCLUSION

For the aforementioned reasons, we affirm the trial court's order.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.