2026 IL App (4th) 260144
NO. 4-26-0144

FILED
March 31, 2026
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Mercer County |
| TIMOTHY WELLER, | ) | |
|     Defendant-Appellee | ) | No. 23CF164 |
| | ) | |
| (Tegna Inc., d/b/a WQAD-TV, Appellant). | ) | Honorable |
| | ) | Matthew W. Durbin, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Presiding Justice Steigmann and Justice Knecht concurred in the judgment and
opinion.

**OPINION**

¶ 1 The trial court found defendant, Timothy Weller, guilty of aggravated battery.
Defendant has not yet been sentenced. Tegna Inc., d/b/a WQAD-TV (WQAD), a television news
station operating out of the Quad Cities area, requested from the clerk of the circuit court a copy
of a surveillance video admitted into evidence at defendant's trial. The court responded by entering
an order on November 7, 2025, sealing "all materials" in the case "until further notice," as reflected
in a docket entry. WQAD then filed a combined petition to intervene and motion to unseal
materials in the judicial record. The court denied both the petition and the motion, and WQAD
appeals. We vacate the order denying WQAD's petition and motion and remand for further
proceedings, with directions specified herein.

¶ 2                                    I. BACKGROUND

¶ 3         The supporting record on appeal is sparse and contains little information about the underlying criminal case. However, the record reflects that defendant is a captain with the Rock Island Arsenal Fire Department. Evidently, he was charged with multiple offenses arising out of an incident in the parking lot of an elementary school in December 2023. On October 17, 2025, the trial court held a bench trial that was open to the public, but representatives of WQAD did not attend. During the trial, without objection and by stipulation, the court admitted into evidence and published multiple exhibits, including People's exhibit No. 1, which apparently was a surveillance video from a camera at the elementary school. The court took the case under advisement and continued the matter to October 20, 2025.

¶ 4         On October 20, 2025, the trial court found defendant guilty of aggravated battery but not guilty of some other charge, the nature of which is not specified in the supporting record. The court dismissed two other counts "per operation of law." The court set the sentencing hearing for January 5, 2026. When defendant later obtained new counsel, the court continued the sentencing hearing to a date to be determined.

¶ 5         On November 7, 2025, WQAD's executive producer, Barb Ickes, requested from the clerk of the circuit court a copy of the subject surveillance video for purposes of televising it. The clerk informed Ickes that this would require court approval and the clerk would consult the trial court. A docket entry from later that day states: "Judge consulted by phone the matter is still pending active litigation, all materials are sealed by order of this Court until further notice."

¶ 6         On December 2, 2025, WQAD filed a combined petition to intervene and motion to unseal materials in the judicial record. WQAD argued that the materials contained within the record were presumptively accessible to the public under both the common law and the first

amendment of the United States Constitution. According to WQAD, the trial court's order from November 7, 2025, was not narrowly tailored and did not overcome the presumption by stating a compelling reason to seal the entire record. Although WQAD requested all materials in the record to be unsealed, it specifically wanted a copy of the surveillance video. WQAD made a representation that when airing footage from the video, it would "blur and redact" any person who was not "involved in the assault" leading to defendant's charges.

¶ 7    On January 5, 2026, the trial court held a hearing on WQAD's combined petition and motion. The court's prefatory remarks indicate that it doubted from the outset whether WQAD was entitled to the materials it requested: "There was previously filed a written motion to intervene by WQAD, a media outlet, which also requested certain information—and I put in quotes, 'court records,' because it was of an interest to the public." The prosecutor indicated that the State had no objection to WQAD's request to intervene but objected to WQAD "accessing the *** videos." The prosecutor emphasized that defendant had not yet been sentenced and the information WQAD sought would presumably be considered at the sentencing hearing. Apparently referencing defendant, the prosecutor asserted that the release of "this video prior to a sentencing hearing does absolutely impact the integrity of the judicial process for this individual." The prosecutor argued that WQAD did not have a right to the video at that time under either the constitution or the common law, though "this could be released to them after the sentencing hearing." Thus, the State believed "the timeliness" of WQAD's request was "improper."

¶ 8    Defense counsel then stated he had no objection to WQAD's petition to intervene and took no position with respect to "the motion for release itself." The trial court brought up that there was a pending civil case filed against defendant by the battery victim. The court then asked the prosecutor and defense counsel, "So the Court was not wrong in stating, for the record, that

- 3 -

there was pending litigation and sealing the record to preserve and protect the rights of all those involved in not having certain material released[?]" The prosecutor responded, "That is the State's position," and defense counsel said, "I believe that's an accurate recitation of the timeline." Defense counsel clarified that he did not represent defendant in the civil case. The court said that "[i]t really doesn't matter," as the pendency of litigation "goes to the Court's analysis as to the public interest v. the record, which is being preserved so that neither the State nor the alleged victim is prejudiced by any release of information."

¶ 9        The trial court then said:

> "The other analysis that the Court entertains at this time is that the requested information is not particularly a court record. That is evidence. It was an exhibit. The exhibits are protected by law and directed to be held by the clerk's office. They are not to be manipulated or duplicated or otherwise disseminated by the clerk's office."

The court asked WQAD's counsel whether he had "anything to say about that" statement. Counsel responded that he did. The court then said:

> "Please argue your side of things, because the Court is coming down, pursuant to statute, as to evidence that was presented in open court. You were not here nor was WQAD nor were any other parties that could have seen it in open court. And now it is an exhibit and stored with the clerk's office for purposes of appeal.
>
> So argue against that, sir."

¶ 10        WQAD's counsel began his argument: "One, the fact that it is an exhibit doesn't change the fact that it's still a document in the public domain." The trial court interjected that a

video was not a document. Counsel continued his argument by noting that exhibits become part of the appellate record. Counsel also asserted that the United States Supreme Court "has been very clear that criminal proceedings are open and accessible to the public, including the exhibits." The court questioned counsel about whether a member of the public would be allowed to view physical exhibits admitted at a trial, such as a weapon, blood stains, or clothing. Counsel responded that the public would have access to whatever "facsimile" of the physical evidence was transmitted to the appellate court, such as photographs or videos. Counsel continued by arguing that the video at issue here was played in court and the legal analysis did not change just because WQAD's representatives did not attend defendant's trial. Counsel also emphasized it was "extraordinarily rare" for a court to seal records, and orders doing so must be "narrowly tailored." Counsel maintained that the docket entry in force here was not narrowly tailored. Counsel concluded his argument by noting that the video depicted events occurring in public.

¶ 11    In rebuttal, the prosecutor reiterated that defendant had not yet been sentenced. The prosecutor also believed "pending litigation" authorized the trial court not to release material to WQAD.

¶ 12    The trial court ruled as follows:

"Number one, public documents does not include exhibits offered to this Court and retained by the clerk of court. You want to research somebody's land titles, you want to research someone's tracks of lands, those kind of things, those are public records and they're available to the public at any time. Exhibits that were placed in to evidence and put into what has not been fully litigated at this point in time—or from [defense counsel's] point of view, as new defense counsel, he may file additional motions as to the quality and preservation of said evidence.

- 5 -

It is not the clerk's duty nor responsibility to comply with requests to duplicate exhibits. These are not public records or documents that are readily available. This Court is not a repository for anyone to come in and check out a piece of evidence or have it duplicated for their own purposes, whether there's a public interest or not. These are pieces of evidence that are to be *** preserved by the clerk.

Next, there is pending litigation; and the Court, in its discretion, believes that any dissemination of any information, whether someone believes it to be a public record or a document to be disseminated, could influence the outcome of that particular case to the detriment of the defendant in the criminal case or be an advantage in the civil case by the alleged victim in this case.

Therefore, the Court believes that the sealing of these particular records and documents—they're not documents; they're exhibits—remains."

¶ 13 WQAD's counsel inquired whether the trial court intended to issue a written ruling or whether he should request a transcript. The court responded that it was denying WQAD's motion and that counsel could request transcripts from the court reporter. The court added that WQAD's "request to intervene is denied at this time" and "the sealing order of this Court remains in full force and effect until such time as I've heard all of the litigation pertaining to this matter." WQAD's counsel expressed confusion about why the court was denying the petition to intervene when nobody objected to it. The court responded that "[a]nyone can come in and request a transcript at any time" and the court was "denying [the petition] at this time." The court asserted that "there really is no basis for intervening at this time for the public interest while there's pending litigation." Counsel again asked the court whether a written ruling would be forthcoming. The

court solicited the prosecutor's input. She responded: "The State takes no position on that, Your Honor. The transcript should suffice." The court agreed that the transcript would suffice. The court then continued the underlying criminal case to February 9, 2026, for a hearing on yet-to-be-filed posttrial motions and sentencing.

¶ 14    On February 4, 2026, WQAD filed a notice of interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a) (eff. Nov. 1, 2017). According to publicly available information, the trial court subsequently continued the proceedings to April 20, 2026, for a hearing on defendant's posttrial motion and sentencing. See *People v. Dyer*, 2024 IL App (4th) 231524, ¶ 11 (taking judicial notice of information about a case that was available on judici.com).

¶ 15    II. ANALYSIS

¶ 16    On appeal, WQAD challenges the trial court's order denying both the petition to intervene and the motion to unseal the record. Neither the State nor defendant have elected to participate in this appeal.

¶ 17    Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017) is a *civil* rule authorizing interlocutory appeals from orders "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." Nevertheless, our supreme court has recognized that this rule allows the press to appeal orders "circumscribing public access to documents" in criminal cases. *People v. Zimmerman*, 2018 IL 122261, ¶ 22. Here, WQAD initially contacted the clerk of the circuit court on November 7, 2025, to request a copy of a surveillance video played at defendant's bench trial. That day, the trial court, informed of the request, responded by entering an order sealing "all materials" in the case "until further notice." On January 5, 2026, the court entertained the merits of WQAD's challenges to the November 7, 2025, order. The court ultimately denied both the petition to intervene and the motion to unseal the record on the same basis—that the

circumstances did not presently justify WQAD having a copy of the surveillance video. The underlying criminal case remains pending for a hearing on posttrial matters and sentencing, and WQAD filed a notice of interlocutory appeal within 30 days of the January 5, 2026, order. Under the circumstances, we have jurisdiction of this appeal, pursuant to Rule 307(a), because the order WQAD challenges circumscribed public access to the requested materials.

¶ 18        This court has emphasized the need for, and desirability of, public scrutiny of judicial processes:

> "[T]he court is a part of government and what goes on in court is the business of the people. Courts function best and most effectively when they are open to the public view. When courts are open, their work is observed and understood, and understanding leads to respect. The file of a court case is a public record to which the people and the press have a right of access." *In re Marriage of Johnson*, 232 Ill. App. 3d 1068, 1074 (1992).

The right of the public to inspect and copy court records has its origins in both the common law and the first amendment of the United States Constitution (U.S. Const., amend. I). See *Zimmerman*, 2018 IL 122261, ¶¶ 27, 40. The analytical steps are a little different under the common law versus the first amendment, and some courts have recognized situations where the public had a common law right to access court records even though the specific facts did not implicate the first amendment. See, *e.g.*, *United States v. Criden*, 648 F.2d 814, 817, 823 (3d Cir. 1981) (explaining that although the press conceded there was no constitutional right to copy audio and videotapes that were admitted in open court at a trial, such right existed under the common law, and the circumstances did not warrant a categorical denial of the press's request for the tapes).

¶ 19        As for the constitutional right, "[t]he determination of whether a first amendment

right of access attaches to a particular record requires a two-step process under what is typically known as the 'experience and logic test.' " *Zimmerman*, 2018 IL 122261, ¶ 28 (quoting *Press-Enterprise Co. v. Superior Court of California for Riverside*, 478 U.S. 1, 9 (1986)). The experience prong considers "whether the document is one that has historically been open to the press and general public," whereas the logic prong considers "whether public access to the document plays a significant positive role in the functioning of the particular judicial process in question." *Zimmerman*, 2018 IL 122261, ¶ 28. "If the test of experience and logic is met, a qualified first amendment right of public access attaches to the material." *Zimmerman*, 2018 IL 122261, ¶ 28. The court then must consider whether the case involves the kind of "limited circumstances" where "the right of the accused to a fair trial" overrides the public's qualified first amendment right. *Zimmerman*, 2018 IL 122261, ¶ 29. Overriding the presumption of public access is justified under the first amendment only where a trial court determines that doing so is " 'essential to preserve higher values.' " (Internal quotation marks omitted.) *Zimmerman*, 2018 IL 122261, ¶ 30 (quoting *Press-Enterprise Co.*, 478 U.S. at 9). Any order denying public access must be narrowly tailored to serve the interest the court identifies. *Zimmerman*, 2018 IL 122261, ¶ 30.

¶ 20 Even if the circumstances do not give rise to a first amendment right, "under the common law there is a presumption that allows the public to inspect and copy public records and documents, including all documents filed with the court." *Zimmerman*, 2018 IL 122261, ¶ 40. In Illinois, the legislature codified this common law right in section 16(6) of the Clerks of Courts Act (Act), which provides:

> "All records, dockets and books required by law to be kept by such clerks shall be deemed public records, and shall at all times be open to inspection without fee or reward, and all persons shall have free access for inspection and examination to

such records, docket and books, and also to all papers on file in the different clerks' offices and shall have the right to take memoranda and abstracts thereto." 705 ILCS 105/16(6) (West 2024).

Like a first amendment qualified right, the common law right embodied in this statute is "not absolute." *Zimmerman*, 2018 IL 122261, ¶ 43. Rather, courts have supervisory power over their own records and files. *Zimmerman*, 2018 IL 122261, ¶ 43. Thus, a court has discretion to determine whether particular records should be open to public scrutiny in light of the facts and circumstances of the case. *Zimmerman*, 2018 IL 122261, ¶ 43.

¶ 21 We review *de novo* whether a particular type of record or proceeding carries a presumption of public access. *In re Gee*, 2010 IL App (4th) 100275, ¶ 19; *People v. Kelly*, 397 Ill. App. 3d 232, 255 (2009). However, if a presumption applies, we then review for an abuse of discretion the trial court's decision as to whether the presumption was rebutted by other concerns. *Gee*, 2010 IL App (4th) 100275, ¶ 19; *Kelly*, 397 Ill. App. 3d at 255-56. A court abuses its discretion when its decision is " 'arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it.' " (Internal quotation marks omitted.) *People v. Morgan*, 2025 IL 130626, ¶ 23 (quoting *People v. Peterson*, 2017 IL 120331, ¶ 125). Regardless of whether the analysis proceeds under the first amendment or the common law, a court denying public access to records must articulate its findings with enough specificity to allow appellate review. See *Zimmerman*, 2018 IL 122261, ¶¶ 30, 43.

¶ 22 A. Whether the Trial Court Erred by Sealing the Entire Court File

¶ 23 As an initial matter, it appears from the supporting record on appeal that the trial court sealed the *entire record* of defendant's criminal case, only a small portion of which is included in the supporting record. The court apparently never vacated its November 7, 2025, order

placing "all materials" under seal until further order. To the contrary, the court said on January 5, 2026, that "the sealing order of this Court remains in full force and effect until such time as I've heard all of the litigation pertaining to this matter."

¶ 24        Orders sealing entire court files are reserved for "the most compelling circumstances." *United Conveyor Corp. v. Allstate Insurance Co.*, 2017 IL App (1st) 162314, ¶ 19. Indeed, it would be an unusual case where the public's presumptive right of access would be outweighed by competing interests with respect to literally "every document contained in the record." *A.P. v. M.E.E.*, 354 Ill. App. 3d 989, 998 (2004). For example, case law is clear that court orders and documents that litigants file are presumed to be accessible to the public. See *A.P.*, 354 Ill. App. 3d at 997 (noting that court orders "are public documents and should not be kept under seal"); *Johnson*, 232 Ill. App. 3d at 1074 ("Once documents are filed with the court, they lose their private nature and become part of the court file and 'public component[s]' of the judicial proceeding [citation] to which the right of access attaches." (quoting *Bank of America National Trust & Savings Ass'n v. Hotel Rittenhouse Associates*, 800 F.2d 339, 343-44 (3d Cir. 1986))).

¶ 25        The trial court never attempted to explain why the circumstances warranted placing *all* materials related to this case under seal. Thus, WQAD is correct that the record does not reflect a valid basis for sealing the entire record.

¶ 26              B. WQAD's Right To Obtain a Copy of the Surveillance Video

¶ 27        The trial court's primary focus at the hearing on January 5, 2026, was whether WQAD had a right to obtain a copy of a surveillance video that was admitted and published in open court during defendant's trial. In denying WQAD's request, the court did not frame its findings in the context of a typical first amendment or common law analysis. Specifically, the court never mentioned whether WQAD had a qualified first amendment right to obtain a copy of the

video under the experience and logic test. Nor did the court make an express finding as to whether WQAD was presumptively entitled to a copy of the video under the common law. The court also did not purport to balance any qualified right or presumption against countervailing concerns.

¶ 28  Rather, the trial court repeatedly mentioned that trial exhibits are not public documents or court records. At one point during the hearing, the court seemingly expressed a belief that the clerk of the circuit court is prohibited from making copies of trial exhibits ("The exhibits are protected by law and directed to be held by the clerk's office. They are not to be manipulated or duplicated or otherwise disseminated by the clerk's office."). Such comments, standing alone, might be interpreted as a roundabout way of expressing that WQAD did not have a qualified first amendment right or presumptive right under the common law to obtain a copy of the surveillance video.

¶ 29  But confusingly, the trial court also identified various concerns it had about authorizing WQAD to obtain a copy of the video before the resolution of the criminal case and related civil litigation. Discussing countervailing concerns, such as the timing of a request, is the type of analysis that is appropriate after a court determines a qualified first amendment right arises or the presumption of public access under the common law applies. Moreover, the court's suggestion that it might be proper for WQAD to obtain a copy of the video sometime in the future is inconsistent with the court's other comments that exhibits are not court records and clerks may not duplicate them.

¶ 30  Ultimately, we cannot ascertain how the trial court's decision and rationale fit within a proper analysis under either the first amendment or the common law. As best we can tell, the court's analysis was limited to making a threshold finding that trial exhibits are not public documents or court records and then outlining some general concerns about WQAD obtaining a

copy of the surveillance video while the criminal case and related civil litigation remain pending. As we will explain, the threshold finding is inconsistent with Illinois law. The court did not conduct a complete analysis under either the first amendment or the common law, so we cannot review the ultimate issue of whether there might be a sound basis for denying WQAD's requests to unseal the record and for a copy of the surveillance video.

¶ 31            The trial court mentioned that video exhibits are not public documents, presumably responding to WQAD's counsel's use of the word "document" in presenting his argument. To be clear, the right of public access does not depend on whether the material is a document in the colloquial sense. See *Zimmerman*, 2018 IL 122261, ¶¶ 27-28, 40 (discussing the public's right to access court records, which includes documents). Notably, the word "document" is not used in section 16(6) of the Act, which codifies the common law right of access to court records. Moreover, we note that Illinois Supreme Court Rule 8(a) (eff. Jan. 1, 2022) says that "[a]ll cases and documents are presumed to be accessible by the court and the clerk." Illinois Supreme Court Rule 2(b)(3) (eff. Oct. 1, 2021) defines "[d]ocument" broadly as "a pleading, motion, photograph, recording, or other record of information or data required or permitted to be filed, either on paper or in an electronic format." In turn, Illinois Supreme Court Rule 455 (eff. Jan. 1, 2023) outlines when parties to criminal cases must file their trial exhibits with the clerk of the circuit court. Thus, trial exhibits such as surveillance videos may be considered "documents" under the supreme court rules, even though the public's right to access court records is not limited to items that typically might be considered documents.

¶ 32            The trial court also reasoned that trial exhibits are not court records. Section 16(6) of the Act says that, unless the Illinois Supreme Court provides otherwise, "clerks of the circuit courts shall keep in their offices" specified items not relevant here plus "[s]uch other books of

record and entry as are provided by law, or may be required in the proper performance of their duties." 705 ILCS 105/16(6) (West 2024). The statute continues, "[a]ll records, dockets and books required by law to be kept by such clerks shall be deemed public records" open to inspection, access, and examination. 705 ILCS 105/16(6) (West 2024). Thus, for purposes of evaluating the court's statement that trial exhibits are not court records, the relevant questions within the context of the Act are (1) whether exhibits admitted during a trial and turned over to the clerk of the circuit court are "records" of the court and (2) whether clerks are "required by law" to keep such exhibits. See 705 ILCS 105/16(6) (West 2024).

¶ 33      A review of Illinois statutes shows that exhibits are considered court records. Section 16 of the Act provides that "[r]ecords kept by the clerks of the circuit courts are subject to the provisions of 'The Local Records Act', approved August 18, 1961, as amended." 705 ILCS 105/16 (West 2024). In turn, the Local Records Act defines "[p]ublic record," in relevant portion, as

> "any book, paper, map, photograph, born-digital electronic material, digitized electronic material, electronic material with a combination of digitized and born-digital material, or other official documentary material, regardless of physical form or characteristics, *** received by any agency or officer pursuant to law or in connection with the transaction of public business and preserved or appropriate for preservation by such agency or officer *** as evidence of the organization, function, policies, decisions, procedures, or other activities thereof, or because of the informational data contained therein." 50 ILCS 205/3 (West 2024).

For purposes of the Local Records Act, "[a]gency" includes "any court" and "[c]ourt" is defined as "a court, other than the Supreme Court." 50 ILCS 205/3 (West 2024). Consequently, exhibits

received by a court when they are admitted at a trial certainly fall within the plain language of the broad statutory definition of "[p]ublic record."

¶ 34        We further note that when a criminal case is appealed, the "record on appeal must contain the entire record of the circuit court," including "all exhibits" other than physical and demonstrative evidence of a nonstandard size. Ill. S. Ct. R. 608(a)(8) (eff. July 1, 2017). It would make no sense for an admitted exhibit to constitute part of the court record when a case is on appeal but not when the case is pending in the circuit court.

¶ 35        We likewise conclude that the clerks of the circuit courts are "required by law" (705 ILCS 105/16(6) (West 2024)) to keep exhibits, pursuant to established standards. The Local Records Act says that "[c]ourt records filed with the clerks of the Circuit Court shall be destroyed in accordance with the Supreme Court's General Administrative Order on Recordkeeping in the Circuit Courts." 50 ILCS 205/4(a) (West 2024). Pursuant to our supreme court's "General Administrative Order on Recordkeeping in the Circuit Courts" (Ill. S. Ct., M.R. 1218 (eff. May 20, 1968)), the Administrative Office of the Illinois Courts maintains a "Manual on Recordkeeping" that applies to all counties other than Cook County, which has its own manual. The Manual on Recordkeeping provides that exhibits received during a trial are not considered part of the "Basic Record" that constitutes the "original trial court record" of the case. Admin. Off. of the Ill. Cts., Manual on Recordkeeping, pt. 1, § F, at F-31 (4th ed. 2024), https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/89f29131-2311-4aa8-aa7f-2032921bc80a/Manual%20on%20Recordkeeping.pdf        [https://perma.cc/4L4F-NUYD]. Nevertheless, clerks must retain custody of any exhibits that are not withdrawn pursuant to specified standards:

"All exhibits admitted during the course of a trial, hearing or other

proceeding, including exhibits offered and not admitted pursuant to Supreme Court Rule 455, shall remain in the custody of the circuit clerk, unless withdrawn; otherwise, shall be retained by the circuit clerk until time for appeal has passed and the time destruction of the Basic Record is permitted by Schedule One or until the court has entered an order granting release or destruction of said exhibits. If an exhibit(s) is allowed to be withdrawn, the circuit clerk shall follow the procedure outlined in SCR 455." Admin. Off. of the Ill. Cts., *supra* pt. 1, § N, at N-71.

In turn, Illinois Supreme Court Rule 455 (eff. Jan. 1, 2023) outlines procedures in criminal cases for clerks of circuit courts to obtain possession of and maintain any trial exhibits that are not withdrawn pursuant to petition. Importantly, the Manual on Recordkeeping expressly states that "[a]ll exhibits are public unless the court ordered [them to be] confidential, impounded, or sealed." Admin. Off. of the Ill. Cts., *supra* pt. 1, § N, at N-71.

¶ 36        Accordingly, we hold that exhibits admitted at trial and then placed in the possession of the clerk of the circuit court are "records *** required by law to be kept by such clerks." 705 ILCS 105/16(6) (West 2024). Under Illinois law, subject to the trial court's discretionary authority to control its own docket, such exhibits "shall be deemed public records, and shall at all times be open to inspection without fee or reward, and all persons shall have free access for inspection and examination" of them. 705 ILCS 105/16(6) (West 2024). Thus, the trial court committed an error of law by evaluating WQAD's requests to unseal the record and obtain a copy of the surveillance video under the mistaken belief that trial exhibits are not court records.

¶ 37        In light of that error, the trial court did not conduct a complete analysis under either the first amendment or the common law for any portion of the record, which it has sealed in its entirety. We cannot undertake that analysis in the first instance, as we do not have a copy of the

surveillance video and the record reflects very little about the underlying criminal case and related civil litigation. The trial court, which is much more familiar with the facts attendant to defendant's criminal and civil cases, obviously had some concerns about whether it would be appropriate to unseal the record and for WQAD to obtain a copy of the surveillance video before the criminal case and related civil litigation are resolved. The matter must be remanded so the court can evaluate and articulate the magnitude of those concerns within the framework of a proper legal analysis.

¶ 38    Although we express no opinion at this time as to which portions of the record should be unsealed and whether or when WQAD should be allowed to obtain a copy of the surveillance video, there are several things the trial court should consider on remand when conducting a proper first amendment and common law analysis, especially as it relates to the requested surveillance video.

¶ 39    There is a substantial body of federal case law, tracing its origins to the United States Supreme Court's decision in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978), addressing the press's right to obtain copies of videotapes and audiotapes contemporaneously with or after they are admitted and played in open court during a trial. See, *e.g.*, *In re Providence Journal Co.*, 293 F.3d 1 (1st Cir. 2002); *Valley Broadcasting Co. v. United States District Court for Nevada*, 798 F.2d 1289 (9th Cir. 1986); *United States v. Beckham*, 789 F.2d 401 (6th Cir. 1986); *United States v. Webbe*, 791 F.2d 103 (8th Cir. 1986); *United States v. Edwards*, 672 F.2d 1289 (7th Cir. 1982); *In re Application of National Broadcasting Co.*, 653 F.2d 609 (D.C. Cir. 1981); *Criden*, 648 F.2d 814. None of these cases held that a district court violated the first amendment by denying the press copies of videotape or audiotape evidence, though none expressly applied the experience and logic test that the Illinois Supreme Court now recognizes as guiding a first amendment analysis. See *Zimmerman*, 2018 IL 122261, ¶ 28. Nevertheless, federal courts

have recognized and applied the public's common law right to obtain copies of trial exhibits, subject to a district court's discretion to weigh that right against countervailing concerns. The Seventh Circuit, for example, has expressly held that the common law "right of access includes the right of the media to copy audio or video tapes which have been admitted into evidence in a criminal trial." *United States v. Guzzino*, 766 F.2d 302, 304 (7th Cir. 1985). On remand, the trial court may find it helpful to consider how federal courts have addressed similar issues when ruling on WQAD's request for a copy of the surveillance video.

¶ 40 Moreover, on remand, the trial court should make a clear record of any specific concerns it has about unsealing the record and WQAD obtaining a copy of the surveillance video. At the January 5, 2026, hearing, the prosecutor's primary objection was that immediate public dissemination of the video would prejudice defendant at the sentencing hearing. The court seemingly echoed that concern in its ruling. This was an unusual argument for the prosecutor to press, considering that defendant took no position with respect to whether WQAD should be allowed to obtain a copy of the video immediately. At any rate, it is not apparent from the record why public dissemination of the video would threaten the fairness of defendant's sentencing hearing. We expect that the court would consider only appropriate factors when it imposes a sentence on defendant, regardless of any publicity.

¶ 41 The trial court also mentioned that dissemination of the surveillance video might somehow adversely affect defendant's pending civil litigation. However, the court did not expressly mention any concerns about tainting the jury pool for the civil trial. If the court is concerned about pretrial publicity influencing the jury pool, it would be appropriate for the court to consider whether any alternatives to denying WQAD's requests to unseal the record and for a copy of the surveillance video would preserve the integrity of the civil proceedings. For example,

the court might consider the possibilities of changing the venue for the civil trial or relying on *voir dire* to identify members of the jury pool who may have been improperly influenced by pretrial publicity. See *People v. LaGrone*, 361 Ill. App. 3d 532, 537 (2005).

¶ 42    The trial court also contemplated in its ruling that defendant might file a motion challenging the "quality and preservation" of exhibits. It is not apparent from the record if or why this might be a concern, as the parties stipulated to admitting the surveillance video at trial. If the court meant to suggest that attempting to duplicate the video might destroy the original exhibit, we note the record does not establish that as a fact.

¶ 43                    C. Denial of WQAD's Petition to Intervene

¶ 44    The trial court also denied WQAD's petition to intervene, even though neither the State nor defendant objected to that petition. The court did not articulate a specific reason for denying the petition, other than stating that WQAD was not entitled to a copy of the surveillance video and "there really is no basis for intervening at this time for the public interest while there's pending litigation." The petition to intervene was merely a way to get WQAD's substantive arguments before the court, which the court considered anyway. As WQAD argues, the press is routinely granted leave to intervene to seek access to sealed court records, even if the court ultimately does not find those arguments compelling on the merits. See, *e.g.*, *Zimmerman*, 2018 IL 122261, ¶¶ 7, 11 (noting that the trial court allowed media outlets to intervene, even though it later determined the requested material should remain under seal until after jury selection). Based on the record presented to this court, we discern no valid basis to deny WQAD's petition to intervene.

¶ 45                              D. Relief

¶ 46    The following relief is appropriate to remedy the errors we have identified. We

vacate the order entered on January 5, 2026, as it affects WQAD, and remand the matter to the trial court for further proceedings, with the following directions. The court shall promptly hold a new hearing, at which it is directed to grant WQAD's petition to intervene. At that hearing, the court will consider anew which, if any, specific portions of the record should remain sealed. If the court believes that any portion of the record should remain sealed, the court shall provide a detailed explanation, conducive to appellate review, reflecting its justification and analysis. As part of its analysis, the court shall also reevaluate WQAD's specific request to obtain a copy of the surveillance video admitted at defendant's trial. In doing so, the court shall begin from the premise that the video exhibit is a court record and then conduct a complete analysis under both the first amendment and the common law. If the court determines that any circumstances militate against WQAD's request to obtain a copy of this video prior to the conclusion of this criminal case and the civil litigation, the court shall consider whether any alternatives short of denying WQAD's request would assuage the court's concerns.

¶ 47        This court's mandate shall issue immediately.

¶ 48                        III. CONCLUSION

¶ 49        For the reasons stated, we vacate the trial court's judgment and remand for further proceedings, with directions.

¶ 50        Vacated and remanded with directions.

*People v. Weller*, 2026 IL App (4th) 260144

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Mercer County, No. 23-CF-164; the Hon. Matthew W. Durbin, Judge, presiding. |
| **Attorneys for Appellant:** | Ian J. Russell and Rhianna E. Lightle, of Lane & Waterman LLP, of Davenport, Iowa, for appellant. |
| **Attorneys for Appellee:** | No brief filed for appellees. |